# DANIEL MOSBY, by S. W. MOSBY, Guardian, Appellant, *v.* MATT. T. GISBORN et al., Respondents.

1. *Decree—Proceeding to Set Aside for Fraud—Where to be Commenced.*

   Defendant Gisborn's false and fraudulent testimony and his concealment of material facts having misled the court sitting in Salt Lake county, and he having obtained a decree declaring plaintiff's deed to be a mortgage, an action to set the decree aside, and to decree plaintiff's title to be absolute, was properly brought in that county, notwithstanding the land was situated in Tooele county.

   An action may be brought to set aside a fraudulent decree, in the county in which it was rendered, though it may affect the title to land situated in another county, under the constitutional provision requiring actions to be brought in the county in which the cause of action arises. Const. Utah, art. 8, § 5.

3. *Judgment—Direct or Collateral Attack.*

   A motion or bill in chancery to set a judgment aside, or an appeal or writ of error to reverse it, is a direct attack; while the denial of the binding effect of a judgment in a proceeding not instituted to annul it, or to enjoin its execution, must be regarded as a collateral attack.

4. *Order Appointing Guardian—When Void.*

   An order of the probate court directing "the clerk to cause due publication thereof to be given as prescribed by law," was void, under section 4347, Comp. Laws Utah 1888, requiring the court before appointing the guardian, to give notice to all persons interested in such manner as it should order. The notice in pursuance of such order was of no effect and the order appointing the guardian upon such notice was void.

5. *Decree—When Set Aside for Fraudulent Representation and Concealment.*

   When the plaintiff, by false representations and concealment, prevents material facts, favorable to defendant, from being presented to the court on the trial, and obtain a decree pre-

   17 UTAH—17

judicial to the defendant to be entered against him, a court of equity will set it aside.

6. *Fraudulent Representations—When not Retried.*

An issue of fact as to fraudulent representations and concealment, tried in the case in which the decree was rendered, will not be retried in a proceeding to set the decree aside.

( No. 948. Decided Aug. 16, 1898.)

Appeal from district court, Salt Lake county; Ogden Hiles, *Judge.*

Suit by Daniel S. Mosby, by his guardian ad litem, S. W. Mosby, against Matthew T. Gisborn and others, to annul a decree. Plaintiff's petition was dismissed, and he appeals. *Reversed,* with directions.

*ickson, Ellis & Ellis,* for appellant:

A bill filed to annul and set aside a judgment or decree on the ground that the court rendering such judgment or decree never acquired jurisdiction over the person of the defendant, and upon the ground also that the judgment or decree complained of was procured by fraud, practiced upon the court and the opposing party, presents a case of direct attack upon the judgment thus assailed. See Van Fleet Collateral Attack, sec. 2; 12 Am. and Eng. Encl. 147*j; Hurlburt* v. *Thomas,* (55 Conn.) 3 Am. St. Rep. p. 43; *Penrose* v. *McKenzie,* 116 Ind. 35; *McCampbell* v. *Durst,* (Texas) 11 S. W. Rep. 381. See also *Morrill* v. *Morrill,* 20 Ore. 96; *Michaels* v. *Post,* 21 Wall. 398, read 426. See also *Eickhoff* v. *Eickhoff,* 107 Cal. 43.

Where, as against a non-resident, the court attempts to obtain jurisdiction by constructive notice, the statute must be strictly complied with. And where, as here, the statute requires that the court shall by its order direct what notice shall be given and the manner in which it

shall be given, the proceedings are void if the order does not comply with the statute in these particulars. *Park* v. *Higby,* 6 Utah 414; *Otis* v. *Epperson,* 88 Mo. 131; *Bradley* v. *Hines,* 33 Iowa 157; *Gronfier* v. *Puymirol,* 19 Cal. 630; *Townsend* v. *Tallant,* 33 Cal. 45; *Seavearns* v. *Gerke,* 3 Sawyer 364. See also *Granger* v. *Superior Court,* 44 Mich. 384. *Woolkins* v. *Haid,* 49 Mich. 299; *Spure* v. *Vanderberg,* 57 Mich. 530; *Nugent* v. *Nugent,* 70 Mich. 52; *Platt* v. *Stewart,* 10 Mich. 260; *Vincent* v. *Smith,* 33 Mich. 155; *Hebel* v. *Ins. Co.,* 33 Mich. 400; *Richardson* v. *Richardson,* 26 Cal. 149, 153, 154; *Braly* v. *Keenan,* 30 Cal. 617, 618; *McMinn* v. *Whelan,* 27 Cal. 213, 214; *Frobes* v. *Hyde,* 31 Cal. 352, 353; *Guarantee Trust Co.* v. *Green Grove Springs R. R. Co.,* 139 U. S. 137.

A decree setting aside and annulling the decree and deed complained of, as having been fraudulently procured, would not directly affect the real estate in question; it would simply remove the obstruction which this fraudulent decree and fraudulent deed interpose to the plaintiff's pursuit of his legal remedy. With the decree and the deed set aside the plaintiff would still be required to bring his action in ejectment for the recovery of the property, and mesne profits; which action would, of course, have to be commenced in Tooele County. See *Morgan* v. *Bell,* (Wash.) 28 Pac. Rep. 925; *Saffold* v. *Scottish Am. Mfg. Co.,* 27 S. E. Rep. 208; *Smith* v. *Bryan,* 34 Ga. 53; *Bivins* v. *Bivins,* 37 Ga. 346; *Mfg. Co.* v. *West,* 61 Ga. 120; *McArthur* v. *Mathewson,* 67 Ga. 135.

*Brown & Henderson* and *R. N. Baskin,* for respondents:

That the action in this case is for the determination of an interest in real estate we cite the court to the following authorities: *Sloss* v. *DeToro,* 77 Cal. 129; *Franklin* v. *Dutton,* 79 Cal. 605; *Baker* v. *Firemen's Fund Ins. Co.,* 73

Cal. 182; *Bush* v. *Treadwell*, 11 Abbott's Practice (N. S.) 27; *Acker* v. *Leland*, 96 N. Y. 383.

It is a separate and independent action brought in equity to set aside and vacate this judgment, it is not a proceeding in the action sought to be annulled, it is not in a court having supervisory power over the court that rendered it, and such action is a collateral attack. 1 Black on Judg., sec. 253; *Hanley* v. *Hanley*, 114 Cal. 690; Van Fleet on Col. Attack, secs. 2, 3, 5, 9 and 11.

We are to determine the validity of this judgment in this action upon the principles applying to collateral attack. When the judgment of a court of record, of general and competent jurisdiction, is collaterally brought in question, everything is presumed in favor of the regularity of its proceedings and its jurisdiction and if on its face it recites and sets out the facts necessary to this jurisdiction its averments are final and conclusive in all collateral proceedings and cannot be contradicted by any extraneous evidence. 1 Black on Judg., sec. 273; *Amy* v. *Amy*, 12 Utah 278; *Astor* v. *Grignons Lessees*, 2 How. 319-340; *Seargent* v. *State Bank Ind.*, 12 How. 385; *Coit* v. *Hamm*, 79 Am. Dec. (Conn.); *Hartman* v. *Osborn*, 93 Am. Dec. 279 (Pa.); *McCaulty* v. *Fulton*, 44 Cal. 355.

The question of notice was purely in the discretion of the court. It had complete control over it and having found that it was given as required by law and as "it had directed," it is conclusively presumed that he had directed it as it was given and that he had ratified and approved it. Van Fleet on Coll. Attack, sec. 835. *Kelly* v. *Morrell*, 29 Fed. Rep. 736; *Gronfier* v. *Puymirol*, 29 Cal. 629.

Nothing is now better settled, and it is universally held upon a bill filed which is an original bill in equity to set aside a judgment or decree for fraud, that the court can only consider matters outside of the record and cannot

retry the question that was at issue in the original action, even though the decree sought to be set aside was obtained upon false and perjured testimony. *United States v. Throckmorton,* 98 U. S. 61; *Green* v. *Green,* 2 Gray (Mass.) 361; *Hanley* v. *Hanley,* 114 Cal. 690 and cases cited in opinion; *In re Griffith,* 98 Cal. 107; *Pico* v. *Cohn,* 91 Cal. 129; *Flaley* v. *Flaley,* 104 Cal. 354; *Morrill* v. *Morrill,* 20 Ore. 96; *Harmon* v. *Moore,* 112 Ind. 221.

This action was brought by Daniel S. Mosby, an insane person, by his guardian ad litem, S. W. Mosby, against the defendants, to annul a decree of the Third judicial district court of the late territory of Utah, entered on the 1st day of September, 1893, in an action wherein the defendant Gisborn was plaintiff and the defendant Emerine Dressler, as guardian of Daniel S. Mosby, was defendant, and to cancel a deed executed by her to the defendant Gisborn, which she purported to execute as the guardian of Daniel S. Mosby and his estate. The decree and the deed are assailed on two grounds, viz.: First, that the court in which the decree was rendered did not acquire jurisdiction over the person of Daniel S. Mosby; second, that the decree was procured by fraud on the part of Gisborn.

The testimony on the trial established the following facts, in substance: That on the 8th day of November, 1880, the defendant Gisborn was the owner and in possession of the Geyser mining claim, described in the complaint, and on that day he entered into an agreement in writing with Daniel S. Mosby, as follows: "This agreement, made on the 8th day of November, 1880, between Matthew T. Gisborn and Daniel S. Mosby, of the county of Salt Lake, territory of Utah, witnesseth: That said Gisborn having this day deeded and conveyed to said Mosby an undivided one-half of the mining ground in Camp Floyd mining district, Tooele county, known as the "Gey-

ser Quicksilver Ground," to be hereafter owned and worked in joint and equal interests for the mutual benefit of each other, and to this end it is hereby agreed that said Mosby advances the sum of two thousand dollars for work, labor, and expenses in the development of said mining ground, and in mining for and marketing quicksilver ores, or other metals which may be found within said ground, and for obtaining a United States patent for the same; and said Mosby agrees to advance as may be necessary and required for such purposes, and as may from time to time be agreed upon by the parties hereto, a further sum, not to exceed one thousand dollars additional; and the said Gisborn is to attend to the direction, control, and supervision of work upon and developing and mining said ground and producing ores therefrom, to the best of his judgment, skill, and ability, and for the mutual benefit of both parties; and from all the net proceeds arising not of the working and developing of said ground, the money and profits therefrom accruing shall be appropriated as follows, viz.: First, to reimburse and repay to said Mosby all the advances he may make herein under the terms of this agreement; second, to reimburse and repay to said Gisborn all the advances he may make in and about the work done under this agreement; third, after such reimbursements, as provided above, the balance to be divided equally between the parties from time to time, as the parties hereto shall agree. And each party agrees to mutually do and execute their several agreements herein for the best interests of their joint ownership in said ground, and to keep and render, each to the other, whenever requested, a full and correct account of all advances, labor, work, developments, proceeds, expenditures, and profits made on or arising herein." This agreement was duly signed and witnessed. That contemporaneous with

the execution and delivery of said agreement Gisborn executed and delivered to Daniel S. Mosby a warranty deed, which was duly acknowledged, so as to entitle it to be recorded, and the same was duly recorded on 22d day of November, 1880, whereby said Gisborn conveyed to said Daniel S. Mosby an undivided one-half on the said Geyser mining claim. That thereafter, on the 16th day of October, 1882, the government of the United States, by letters patent, conveyed the said mining claim to Gisborn and Mosby, their heirs and assigns, forever. That early in the spring of 1881 Mosby departed from the territory of Utah, and has never since returned. That prior to the year 1893 Mosby became insane, and ever since has been wholly incompetent to attend to business. That the defendant Emerine Dressler is the mother of said Mosby, and at the time of the trial of this action was upwards of 74 years of age. That during the year 1893 and 1894, continuous, and for more than 20 years prior to 1893, she and Gisborn had been intimately acquainted, during much of which time Gisborn had lived in her house as a member of her family, and during all of which period their relations had been of a particularly friendly character, and she reposed implicit trust and confidence in his integrity and veracity, and had always regarded him as one in whom she might safely trust and confide. That in the year 1894 she had not, nor had she at any time prior thereto, had any knowledge or information of what the true interest of her son Daniel in said mining claim was, or any knowledge or information respecting the same, except from the statements and representations made to her by Gisborn. That in the month of January, 1893, Gisborn then knowing that said Mosby was insane, and wholly incompetent to attend to business, represented to Mrs. Dressler that her son had advanced to him $2,000, and had agreed, but failed, to ad-

vance an additional $1,000 for a half interest in the claim, and that the only interest that Mosby then had in the same was an interest of $2,000, and that said sum was then due from him (Gisborn) to said Mosby; and then and there further represented to Mrs. Dressler that if she would procure herself to be appointed guardian of the estate of her son, so that a suit could be brought by Gisborn against her as guardian, he could have the interest which Mosby had in the property adjudged to be a mortgage, and be permitted to redeem therefrom, he would pay to her $3,000; and then requested her to accompany him to the office of his attorneys, and employed them as her attorneys to procure for lettters of guardianship of the estate of her son. She was wholly unacquainted with and unfamiliar with business matters, and reposed full trust and confidence in the truth of the representations made to her by Gisborn, and in consideration of his promise to pay her $3,000 she consented to apply for such letters of guardianship, and in company with him employed his attorneys as her attorneys in the matter. That Gisborn paid all the expenses of the application for the letters, including the attorneys' fees. That at the time Gisborn made such representations to Mrs. Dressler, and continuously thereafter, and until after the entry of the decree in the case of Gisborn against Emerine Dressler, as guardian, his attorneys were her attorneys. That on the 9th day of February, 1893, Mrs. Dressler, by her said attorneys, caused her petition for said letters to be filed in the probate court of Tooele county. That said application was prepared and presented by, and all proceedings thereunder managed, controlled, and conducted by, the same attorneys. That in the petition it was alleged that the only relatives of the said Daniel S. Mosby other than the petitioner was a brother residing at Park City, a sister

residing at Salt Lake City, a brother residing in Butte, Mont., and a niece living at Leeds City, Dak.; and it was further alleged that by virtue of said contract entered into between said Daniel S. Mosby and defendant Gisborn, Mosby acquired an interest, not exceeding in value the sum of $3,000 in certain mining property, a patent for which was issued some time in the year 1882, which is more fully described; that upon the filing of the petition the probate judge of the county made the following order respecting the hearing of the petition, and for notice thereof, viz.: "Upon reading and filing the petition of Emerine Dressler, praying for the issuance to her of probate letters of guardianship on the estate and person of D. S. Mosby; it is ordered that Wednesday, the 2d day of March, 1893, at 10 a. m., at the county courthouse at Tooele City, be and is hereby appointed for the hearing of said petition, and that the clerk cause due notice thereof to be given as prescribed by law, that all persons interested may appear and oppose said petition." No further order for notice was ever made in the matter. That the only notice given of the application, and the only proof of notice made in the matter, was by posting a copy of the notice in three public places in Tooele City, viz. one at the postoffice, one at Droubay's store, and one at the probate court, said notice being as follows: "Notice is hereby given that Emerine Dressler has filed with the clerk of this court her petition praying for letters of guardianship of the estate and person of D. S. Mosby, an insane person, and that Wednesday, the second day of March, 1893, at 10 o'clock a. m. of said day, at the courthouse in Tooele City, and county of Tooele, territory of Utah, has been set for hearing said petition, when and where any person interested may appear, and show cause why the said petition should not be granted. Elijah

Spray, Clerk." No notice, personal or otherwise, was ever given to Daniel S. Mosby, or to the person in whose custody he was. That on the 2d day of March, 1893, the probate court made the following order in the matter: "The petition of Emerine Dressler for the appointment of herself as the guardian of the person and estate of said insane person coming on regularly to be heard on this 2d day of March, 1893, upon due proof to the satisfaction of the judge of said court, that due notice has been given to the relatives of the said insane person, residing in this county, and to the person under whose care said insane person now is, as required by law, and as directed by the judge of this court, and it duly appearing to said judge that said insane person is resident of Santa Fé, New Mexico, and that he has estate within the county of Tooele, Utah, which needs the care and attention of some fit and proper person, it is hereby ordered that said Emerine Dressler be, and is hereby, appointed guardian of the person and estate of said insane person, D. S. Mosby, and that letters of guardianship of the person and estate of said Mosby be issued to her upon her giving bond to said D. S. Mosby in the penal sum of three thousand dollars, and upon the taking and subscribing an oath according to law. Charles A. Herman, Probate Judge."

That afterwards, and upon the 13th day of March, 1893, upon the filing of the bond required by said order appointing her such guardian, the defendant Emerine Dressler has issued to her by the clerk of the probate court letters of guardianship of the person and estate of said Daniel S. Mosby, she having duly taken the oath required. That on the 26th day of April, 1893, the defendant Gisborn commenced an action in the district court of the Third judicial district of the late territory of Utah, entitled "Matthew T. Gisborn, plaintiff, v. Emerine Dressler, guardian

of the person and estate of D. S. Mosby, defendant," by filing his complaint. That in his complaint he falsely alleged that on the 13th day of March, 1893, "after due and sufficient notice, to wit, after publication and after service of notice personally upon the said D. S. Mosby, and due proof thereof, the said Mrs. Emerine Dressler was appointed the guardian of the said D. S. Mosby as an insane person;" and, after setting out the issuance of patent to said Geyser mining claim, it is further alleged in the complaint as follows: "That on the 5th of November, 1880, he (Gisborn) was the sole owner thereof (the Geyser lode), in the possession and entitled to the possession thereof; that, at the time being unable to properly develop the same, and to procure means to secure patent therefor, he entered into a contract with the said D. S. Mosby, by the terms of which said contract the said D. S. Mosby agreed to furnish to the plaintiff the sum of $3,000, for the purpose of developing the said claim and securing patent; that the said Mosby did at various times furnish money under and by virtue of the said contract, but did not furnish the entire sum of $3,000;" and then it is falsely averred in the complaint: "That after the patent was secured in the joint names of the said parties, the said Gisborn having given him an interest therein as security for the sum advanced, the said plaintiff and the said Mosby had an accounting and settlement, to wit, on or about the midsummer of 1882; that by the terms of said settlement and accounting it was found that the said Mosby had advanced about two thousand dollars; it was agreed, however, it should be considered and held as being two thousand dollars; that it was then agreed between the said Gisborn and Mosby the interest of the said Mosby in the said Geyser lode should be the sum of two thousand dollars and interest thereon, and that should be his inter-

est in the said premises, and that he should hold his undefined right and title in the said Geyser lode as security for the payment to him of the said two thousand dollars and interest, and not otherwise; that the said conveyance, which had been made by the said Gisborn to Mosby, was conditional upon his furnishing the full sum of three thousand dollars; that the said patent from the United States to the said Gisborn and Mosby was to be considered and held as a mortgage in favor of the said Mosby and against the said Gisborn upon an undivided one-half of the property of said Gisborn in the said Geyser lode." It is further falsely alleged in the complaint as follows: "And the said Gisborn is now the owner of the entire right, title, interest, possession, and right of possession in and to the Geyser lode, subject, however, to the said lien and claim of the said Mosby for $2,000 against it, as thus evidenced by the said patent, and by the deed from this plaintiff to the said Mosby; that no part of the said claim has been paid, and that there is now due and owing from the said plaintiff to the said Mosby the sum of two thousand dollars and interest from the date of said settlement and accounting, to wit, from the summer of 1882, at the legal rate of —— per cent per annum, which was the agreed rate of interest between the said parties that the said plaintiff is now ready and willing and offers to pay the same into court for the purpose of releasing the said premises from the said lien, and that on account of the incapacity of the said Mosby he has not been able heretofore to pay the same, and the said guardian cannot receive the same and execute a release of the said lien until this court has decreed the said deed a mortgage."

A summons was issued in the action on the 23d of April, 1893, which was within a few days thereafter served on Mrs. Dressler. That prior to such service of summons and

complaint the defendant Gisborn informed said Emerine Dressler that the said summons and complaint in said action would be served upon her, and stated to her that he called to so inform her, lest she might be frightened if she did not understand the matter when the officer would appear to make the service; and in response to an inquiry then made of him by the said Emerine Dressler as to whether she would have to go to court again, or what, if anything, she would have to do when said papers were served upon her, the said Gisborn then informed her that there would be nothing for her to do in or about the premises, and that there would be no necessity or need for her to go to court, or to appear, or do anything concerning said action, and therefore she failed to appear in said action, and suffered default to be entered against her on the 25th day of August, 1893. That afterwards, in August, 1893, the action was brought on to be heard in open court, Gisborn's attorney appearing for the plaintiff in the action, and no one appearing for the defendant, whereupon the court, having heard the evidence, made and filed findings of fact, conclusions of law, and decree in said action, in accordance with the prayer of the complaint, adjudging the interest of Mosby in said property to be that of a mortgage for the sum of $2,000, with interest thereon at the rate of 10 per cent per annum from the midsummer of 1882, and that on the payment by plaintiff to the said defendant, as guardian for said Mosby, of said sum of $2,000, with interest from said date until paid, the plaintiff is entitled to receive a deed of the said premises from the defendant, conveying the undivided one-half interest of the said Mosby to him in fee, and clear from all liens or incumbrances. That said Gisborn, while purporting in his said complaint to plead said agreement between him and Mosby, according to its tenor and effect, did in fact

willfully, intentionally, and designedly, with intent to mislead and deceive the court in which said complaint was filed, and to cheat and defraud said Mosby, suppress and conceal the true tenor and effect of said agreement in the particulars hereinbefore stated, and in like manner and for the like purpose in his complaint falsely state and represent the tenor and effect of said agreement. That afterwards, on the 11th day of July, 1894, Gisborn represented to Mrs. Dressler that it was necessary for her to give to him the deed called for in the decree in order to enable him to make a sale of the property, and thereby procure the $3,000 which he had agreed to pay her; and she, reposing full confidence in him, did, on the last day aforesaid, without having any portion of the money paid, execute and deliver to him a deed, whereby, as guardian of said Mosby, she purported to convey to him the entire interest of said Mosby in the said mining claim; and that, notwithstanding he sold said property to the defendant company herein in 1895, he has never yet paid Mrs. Dressler any amount whatever except the sum of $55, which was paid about January 1, 1896.

The court, in its eighth finding of fact, uses the following language: "The court further finds that in the complaint in said action, verified by the said defendant Gisborn, the tenor and effect of the said contract and agreement between the said Daniel S. Mosby and Matthew T. Gisborn, set out in the fourth finding of fact herein, was not truly stated or pleaded, but that the said defendant Gisborn, plaintiff in said action, while purporting in his said complaint to state and plead said agreement according to its tenor and effect, willfully and intentionally and designedly, with intent to mislead and deceive the court in which said complaint was filed, and to cheat and defraud the said Daniel S. Mosby, suppressed and concealed the

true tenor and effect of said agreement, and willfully and designedly and fraudulently, with the intent to deceive and impose upon said court, and to cheat and defraud the said Daniel S. Mosby, did falsely state and represent in his said complaint the tenor and effect of said agreement. The court further finds: That the allegations in said complaint in said action above mentioned, and set forth in these findings, are and were in tenor and effect false and untrue in this: that said notice of the application of the said Emerine Dressler for such letters of guardianship was never served upon said Daniel S. Mosby, nor upon any one in whose care or custody he was, nor was there any proof of such service made to said probate court before said probate court made said order of appointment of guardian as aforesaid; and in this: that the said defendant Gisborn, plaintiff in said action, did not, on or about the 8th day of November, 1880, or at any other time, enter into a contract with the said Daniel S. Mosby, as stated in the said allegations of said complaint in said action, or any contract whatever, respecting said property, other than the contract set out in the fourth finding of fact herein, and that embodied in the deed heretofore found to have been given by the said Gisborn to the said Mosby on the 8th day of November, 1880; and in this: that it was not agreed in the midsummer of 1882, or at any other time, between the said Gisborn and the said Daniel S. Mosby, pursuant to any settlement or accounting or otherwise, that the interest of the said D. S. Mosby in said property should be the sum of $2,000, or any other sum, with or without interest thereon, or that he (said Mosby) should hold his right or title in said property as security for the payment of $2,000, or any other sum, with or without interest, or that the said conveyance from the said Gisborn to the said Mosby, or the said patent from the United

States to said Gisborn and said Mosby, was to be considered or held as a mortgage in favor of the said Mosby, as alleged in said complaint, or otherwise than as an absolute conveyance to the said Mosby of an undivided one-half of said property. That the said Gisborn, when he verified said complaint in said action, and caused the same to be filed in said court, well knew that the allegations therein contained were, and each of them was, false in the particulars in this finding set forth, and that he made such false allegations in his said complaint fraudulently and wickedly, and with the intent and purpose of imposing upon and deceiving and misleading said court in which said action was brought, and with the intent and purpose of cheating and defrauding the said Daniel S. Mosby out of his said title in said property. The court further finds that the allegation in said complaint in said action above mentioned, as to the possession of the whole of said mining claim, to the exclusion of said Mosby, was and is a false allegation; and the allegation in said complaint in said action to the effect that said Gisborn was the owner of the whole of the right, title, and interest and possession, and right of possession of said mining claim, subject to a lien or claim of said Mosby for $2,000, was and is a false allegation, and intended by said Gisborn to deceive and mislead said court, and made for the purpose of cheating and defrauding said Daniel S. Mosby out of his said one-half interest in said mining claim and property."

All of the foregoing facts were, in substance, found by the court, with this qualification: "Ninth. The court further finds that the said Emerine Dressler might have, by the exercise of ordinary care and dilligence, ascertained the true character and nature of the interest of the said Daniel S. Mosby in the said Geyser mining claim, and might have, by the exercise of such care and dilligence,

ascertained that the allegations in said complaint to the effect that an accounting had been had between the said Gisborn and the said Daniel S. Mosby in the midsummer of 1882, whereby it had been ascertained and determined between them that the amount of money advanced by the said Mosby to the said Gisborn was about $2,000, and that it had been agreed between them that the said Mosby should hold the legal title to an undivided one-half of the said Geyser mining claim as security for the repayment by the said Gisborn of said sum of $2,000, with interest thereon, and not otherwise, was false and untrue; and that in suffering her default to be entered in said action, and in failing to appear in and defend the same, she, said Emerine Dressler, was either acting in collusion with the said Gisborn to enable him fraudulently to devest the said Daniel S. Mosby of his said interest in said Geyser mining claim, and to cheat and defraud him out of the same, in order that she, said Emerine Dressler, might procure from said Gisborn the said sum of $3,000, so promised her by him as aforesaid, or she was grossly inattentive to and negligent of her duties in the premises." While this find ing may be regarded as true, assuming that Mrs. Dressler was competent to attend to business, and that she did not rely upon Gisborn's statements with respect to the prop erty, yet it would appear that all she knew about the property, or Daniel S. Mosby's rights, were learned from Gisborn, and it is a reasonable inference that she believed they were true. She left the whole matter as to having herself appointed guardian and as to her appearance in the suit of Gisborn against her, as guardian, to him, and that he in fact attended to both sides of the matter. From the complaint and answer in this case it is reasonable to assume that the one-half interest of D. S. Mosby in this

17 UTAH—18

property was worth much more than $3,000. The precise sum or value was not stated by any witness. It appears that in the case of Gisborn against Dressler, as guardian, no witnesses were sworn or examined except Gisborn, and that no testimony was offered or received, except his oral testimony, to sustain any of the allegations of the complaint in said action. The further allegation is found in plaintiff's complaint that "said plaintiff is unable to state the precise value of his said undivided one-half of said mining claim, but is informed and believes, and upon such information and belief alleges, that it is worth many thousands of dollars." This allegation is not denied and there is no evidence to show what the value of the property was.

Zane, C. J. (after stating the facts):

Counsel for defendants insist that the district court sitting in Salt Lake county did not have jurisdiction to try the cause of action set up in the complaint, for the reason that the vacation of the decree and the cancellation of the deed described would affect defendants' title to the Geyser mining claim, situated in Tooele county; and for the further reason that the complaint also asks that the plaintiff may be declared the owner of, and entitled to the possession of, the one-half interest in that claim, and that the defendant company may be required to convey the same to the plaintiff; and also for the further reason that the complaint prayed the court to adjudge the order of the probate court of Tooele county purporting to appoint Emerine Dressler, guardian of Daniel S. Mosby and his estate absolutely void. The principal ground upon which plaintiff's right of action is based was an alleged fraudulent scheme concocted by the defendant Gisborn, and false

representations and statements to Mrs. Dressler, and the concealment of Daniel S. Mosby's title to the Geyser claim, and by false representations in the complaint in the case in which the decree complained of was entered, and by false testimony before the court; by all of which plaintiff's rights were prevented from being set up, and the evidence to establish them kept from the court. This alleged scheme also included the appointment of Mrs. Dressler guardian of Mosby. From the allegations of the complaint and the findings of fact by the court in this case the fraudulent scheme was quite comprehensive. And when the plan resulted in deceiving the court, and in the fraudulent decree, sought to be set aside, the plaintiff's right of action arose. The execution of the deed also appears to be a part of the same fraudulent design. The various facts stated in the complaint appear to be pertinent, and, when the execution of the fraudulent scheme culminated in the decree, plaintiff's right of action came into existence, and it arose in Salt Lake county.

Reference is made to the constitutional provision designating the county in which actions must be brought and tried. The language is, "All civil and criminal business arising in any county, must be tried in such county unless a change of venue be taken, in such cases as may be provided by law." Const. art. 8 § 5. The phrase 'civil business" means such civil business as amounts to a cause of action, as the law defines a cause of action, and by "criminal business" is meant such conduct, attended with such intent, as amounts to a crime, as the law defines a crime. It would seem that when Gisborn's false representations, his concealment, and his false testimony resulted in preventing Mosby's title from being set up, and the evidence that would have established it, and in deceiving and misleading the court, and in the decree

depriving him of his title, his right of action arose, and, the decree being rendered in Salt Lake county, Mosby's right of action must have arisen in that county. Konold v. Railway Co. 216 Utah 151, referred to, was commenced in Weber county, Utah, to recover damages in consequence of an injury caused by the explosion of a boiler on one of the company's engines in Emery county. It was alleged that the explosion occurred from the negligence of the company. The court held the cause of action arose in the latter county, and that it should have been commenced there, and ordered the action to be dismissed. Reference is also made to *Irrigation Co.* v. *McIntyre*, 16 Utah, 398. In that case it appeared that the defendants diverted the waters of the Sevier river in San Pete county, depriving the plaintiffs, who had made a prior appropriation, of their right to divert and use the waters of the same river 60 miles below, in Millard county. The court held that there was but one cause of action, and that it arose in Millard county, and intimated that it might also have been brought in San Pete county, where the wrongful diversion of the water from the river occurred. Unless the plaintiffs had a right to the water that the defendants diverted in San Pete county, and the diversion there was an injury to them there that gave them a right of action, and the injury that resulted to them in Millard county was not essential to that cause of action, it is difficult to understand how the right of action could be regarded as arising in San Pete county as well as in Millard. Conceding that the action might have been brought, at common law, either in the county where the wrongful act occurred or in the county where the land was injured in consequence of that act, it is difficult to understand how such right of action could arise at different times and in different counties.

under the constitutional provision quoted, which requires the action to be brought in the county in which the cause of action arises. The plaintiffs did not have a right of action until they were injured, and it would appear that they were deprived of the water to irrigate their lands in Mil lard county. The defendants' wrongful act resulted in injury there. Because one fact essential to a cause of action may occur in one county and another essential fact in another, it does not, under the constitutional provision, give a right of action in either. The cause of action arises when and where the last fact essential to it occurs, and not until them. As soon as it occurs the right of action arises, and the county in which the cause of action arises in the one in which to bring the suit. The constitution appears to have changed the common-law rule in such cases. However, it is not necessary to determine in this case whether the action could have been commenced in either county.

In the case of *Brown* v. *Bach*,      Utah,      , the court held that a promissory note executed and delivered in Tooele county, and made payable in Salt Lake county, should be sued on in the latter, where the breach occurred, and not in the former, where the note was made. The execution of the note and its breach were facts essential to the cause of action. One accrued in one county, and the other in another. It is urged, however, that plaintiff's complaint includes not only a prayer for the vacation of the decree and cancellation of the deed, but also asks that he may be adjudged the owner of the one-half interest in the property, and entitled to its possession. A cause of action for an injury to real estate by trespass, waste, or by forcible entry or wrongfully taking possession thereof, or for wrongfully with-holding possession thereof, must arise from some act, or some omission to act, upon the land, and with respect to it, by which the

plaintiff's right to it is violated. The violation of right, or the wrong which gives the plaintiff a cause of action, must accrue where the land is. Such causes of action must necessarily arise in the county in which the land is situated. They are necessarily local actions, and remain so under the constitutional provision. Local actions embrace actions for the possession of land, or damages for actual trespass or waste, for nuisance to a house, for disturbance of right of way, for the diversion of water courses, and the like. Such causes of action must arise where the property is, and in the county in which it is situated. This action was brought to remove a cloud from plaintiff's title by annulling the decree and canceling the deed described. The object of his action was the protection of his title. It is not an action for the actual possession of an undivided one-half of the claim, nor for damages for a trespass upon it, or injury to it. If, when the title is perfected, the defendants shall refuse possession, a proceeding for the possession will be necessary. The act that will authorize such a proceeding will occur on or at the land. It is also urged that this action should have been commenced in Tooele county, because the court is asked to declare the order appointing Emerine Dressler guardian of the plaintiff, and the letters issued to her of no effect. If the order is void, it can be so held in whatever jurisdiction it may be relied on, and, of course, the letters can have no effect unless a valid order authorizing their issuance exist. We are of the opinion that this action was properly brought in Salt Lake county. *Johnson* v. *Gibson*, 116 Ill. 294; *Massie* v. *Watts*, 6 Cranch 148.

Counsel for the respondents contend that the decree sought to be set aside is not void; that the plaintiff, by this action, has made a collateral attack upon it; and that the relief he asks for that reason cannot be granted. It

is undoubtedly true that a judgment or decree cannot be set aside when the attack upon it is collateral, unless it is absolutely void. The question is raised, is this action a direct proceeding to set the decree aside? Motions and bills in chancery to set judgments aside, and appeals or writs of error to reverse them, are direct proceedings. That is the direct purpose of such proceedings. Their aim is the vacation of the judgment, and not a collateral one. The attack on the judgment in that case is not incidental to the object of the proceeding. The end of the proceeding is not something collateral to the judgment. A denial of the legal and binding effect of a judgment in a proceeding not instituted for the purpose of annulling or changing it, or of enjoining its execution, must be characterized as a collateral attack upon it. This action, brought to set the decree aside, must be regarded as a direct attack upon it. *Morrill* v. *Morrill,* 20 Or. 96; 12 Am. & Eng. Law, 147; *Owens* v. *Ranstead,* 22 Ill. 162; *McCampbell* v. *Durst,* (Tex. Sup.) 11 S. W. 380; Van Fleet, Coll. Attack, § 2.

Counsel for plaintiff insist, further, that the order of the probate court of March 2, 1893, appointing Emerine Dressler guardian of the person and estate of Daniel S. Mosby, was absolutely void, and that the court for that reason did not at any time acquire jurisdiction of the case of Gisborn against Emerine Dressler, as guardian of his person and estate, and that the decree entered was therefore void. The court below found, and it is conceded, that Daniel S. Mosby, at the time the order was made, and from thence hitherto, and for several years previous, was insane, and confined in an asylum in New Mexico. That being so, the laws of the late territory of Utah required the probate court of Tooele county, before making the order appointing the guardian, to give notice to all persons interested, in

such manner as the court should order, by publication or otherwise. Comp. Laws Utah 1888, § 4347. The law required the court to specify in its order the notice, and to require it to be given by publication in a newspaper, by posting, or by personal service, and to state therein whether it should be published in a newspaper or be posted, or by both, or whether personal service should be made, and in either case to state how long, and, if by posting, where, and in how many places. The order named the time and place for the hearing of the application for the appointment, and then directed "the clerk to cause due publication thereof to be given as prescribed by law, that all persons interested might appear and oppose the petition." When notice by publication or posting is given, it is substituted for personal service, and the law must be strictly pursued; and, if any requirements of the law is omitted, the service will be fatally defective. "If jurisdiction of the person of the defendant is to be acquired by publication of the summons in lieu of personal service, the mode prescribed must be strictly pursued." *Galpin* v. *Page,* 18 Wall. 350; *Bardsley* v. *Hines,* 33 Iowa 157; *Park* v. *Higbee,* 6 Utah 414; *Hathaway* v. *Clark,* 5 Pick. 490; *Chase* v. *Hathaway,* 14 Mass. 222.

The court found that the application of Emerine Dressler for such letters of guardianship was never served upon Daniel S. Mosby, nor upon any one in whose care or custody he was, nor was there any proof of such service made to the probate court before the order was made. By this case a direct attack was made on the order requiring notice of the application for letters of guardianship to Mrs. Dressler. And it appears from the evidence this order was fatally defective, because it simply directed the clerk to cause due notice thereof to be given as prescribed by law. The court was not authorized to intrust to the clerk

what would be due notice as prescribed by law. *Eichhoff* v. *Eichhoff*, 107 Cal. 42; Freem. Judgm. (3d Ed.) 495. In *Eichhoff* v. *Eichhoff, supra,* the court said: "Says Freeman [Freem. Judgm.], at section 495, speaking of judgments entered without notice to defendant: 'But proceedings in equity are peculiarly appropriate for the exposure of this infirmity. They permit of the formation of issues upon the question of service of process, and of the trial of those issues after full opportunity has been given to those who seek to sustain, as well as those who seek to avoid, the judgment. If at such trial it satisfactorily appears that the defendant was not summoned, and had no notice of the suit, a sufficient excuse is shown for his neglect to defend, and equity will not allow the judgment, if unjust, to be used against him, no matter what jurisdictional recitals it contains.'"

Finally, appellant's counsel urge fraud as a ground for setting aside the decree and deed in question. Undoubtedly Daniel S. Mosby held an absolute title to an undivided one-half interest in the Geyser mining property when Gisborn commenced his suit against Emerine Dressler, as the guardian of Mosby, and that he had held such title for nearly three years before. And it appears from the evidence in the record that Gisborn conceived a scheme before the suit was brought of having Mosby's interest decreed to be in effect a mortgage to secure the payment of the $2,000 he had paid for it. To accomplish this end, he represented to Mosby's mother that it had been so agreed between Mosby and himself in the summer of 1882, because her son had not advanced an additional sum of $1,000 he had agreed to; that he promised her $3,000 if she would consent to be appointed her son's guardian, who was then insane; and that she consented and was appointed, and was then made defendant to Gisborn's action

to have Mosby's interest so declared. It is also true that Gisborn in his complaint falsely represented that Mosby held the deed to one-half of the claim simply to secure the $2,000, and that he controlled the defendant's side of the case as well as his own; that he prevented Mrs. Dressler from setting up her son's title; that no defense was interposed, and upon his false testimony the insane man's deed was decreed to be, in effect, a mortgage to secure the $2,000; and that the court was imposed upon and misled by Gisborn's false testimony. There can be no doubt that the court would not have granted the decree complained of if the truth had been stated by Gisborn, who was the only witness. Gisborn not only made false statements, but also concealed facts and prevented an answer or appearance in the case. There was no adversary trial. This insane man's case was not presented to the court. It was decreed away by means of deceit, false statements, and perjury. Equity abhors all such nefarious and detestable means to mislead asd deceive courts of justice, and deprive persons of their rights, especially when the victim is insane. If the fraud now relied on to set the decree aside had been in issue in that case, and fairly tried, it could not be retired; but such was not the case. There was no contest before the court on the trial in that case. The fraudulent devices employed by the plaintiff prevented the formation of any issue for trial, and they were effectual in suppressing the truth. This insane man's case was not exhibited to the court. The decree, and the deed of the alleged guardian made in pursuance of it, cannot be permitted to stand. 2 Freem. Judgm. §§ 491, 493; U. S. v. *Throckmorton*, 98 U. S. 61. The decree of the court below dismissing plaintiff's suit is reversed, and the case is remanded, with directions to that court to set aside its conclusions of law, and to state others in accordance with

this opinion, and to grant a decree annulling and setting aside the decree of September 1, 1893, in the case of Gisborn against Emerine Dressler, guardian of the person and estate of Daniel S. Mosby, and vacating her deed in pursuance thereof to Gisborn, and adjudging the title to one-half of the Geyser mining claim, the property described in the complaint, to be in Daniel S. Mosby; with costs of this appeal to plaintiff.

We concur in the conclusion, but not in criticising or overruling the case of *Deseret Irrigation Co.* v. *McIntyre et al.,* 16 Utah 398.

MINER and BARTCH, JJ.