## GLENN v. RICH.

No. 6581. Decided April 18, 1944. (147 P. 2d 849.)

See 39 C. J. S. Guardian and Ward, sec. 38; 25 Am. Jur. 35.

*John C. Davis* and *Howell, Stine & Olmstead,* all of Ogden, for appellant.

*Ira A. Huggins,* of Ogden, for respondent.

WOLFE, Chief Justice.

Action on a promissory note. From judgment for the plaintiff the defendant appeals.

Thomas Glenn, plaintiff and respondent, brought suit on a promissory note alleged to have been executed and delivered by Barbara Blosser. After alleging the execution and delivery of the note, the plaintiff alleged that the note had not been paid, that he was the legal owner and holder of the said note, that the maker of the note, Barbara Blosser, died testate at Ogden, Utah, on April 1, 1940, leaving an estate in Weber County, State of Utah, and that thereafter the defendant, Edward I. Rich, was duly appointed executor of the estate of Barbara Blosser. Plaintiff also alleged that the defendant, as executor of the estate of Barbara Blosser, had caused notice to creditors to be published as required by law, that the plaintiff had presented the said promissory note for payment and that the defendant had rejected the same.

In answer the defendant denied that Barbara Blosser had ever executed or delivered the note. In further defense the defendant urged that if the said Barbara Blosser did execute and deliver the note she was induced to do so by fraud and duress. By way of affirmative defense the defendant alleged that

"on the 28th day of March, 1940, and prior to the time when it is alleged she executed and delivered the note set out in plaintiff's complaint, the said Barbara Blosser had been, upon her own petition,

adjudged by the above-named court to be unable to properly manage and take care of herself and her property, and Dr. Edward I. Rich had been by order of the said court, appointed as guardian of her person and estate and had duly qualified as such, all of which the plaintiff well knew."

Copies of the petition, the order appointing the guardian, and Letters of Guardianship were attached to the answer. It was also alleged that Barbara Blosser was in fact incompetent and did not have the mental capacity to execute a contract. The plaintiff did not file a reply.

The trial court found in substance that all the allegations of the complaint were true. In regard to the defendant's answer it found that the note was duly made and executed on March 29, 1940; that the note was executed for valid consideration and without fraud or duress; that the guardianship proceedings in which the court purported to appoint a guardian for the said Barbara Blosser were null and void; and that the said Barbara Blosser was in fact competent to understand the nature of her act in executing and delivering the promissory note to the plaintiff. Judgment was entered for $2,250, the amount of the note, and $250 attorney's fee. The defendant appealed.

On appeal the defendant first urges that under the pleadings the trial court erred in permitting the plaintiff, over the defendant's objection, to introduce any evidence whatsoever. He points out that the plaintiff bases his action entirely upon a promissory note alleged to have been executed and delivered by Barbara Blosser. By way of answer the defendant alleged that prior to the time when said Barbara Blosser executed the note she had been declared by the court to be unable to properly manage and take care of herself and her property and that a guardian had been appointed and duly qualified as such. The plaintiff filed no reply. Defendant argues that Section 104-12-2, U. C. A., has been construed to require a specific verified denial of the allegations regarding the appointment of a guardian. In the absence of such a denial, he urges such allegations are admitted. Since plaintiff filed no reply to

the allegations concerning the appointment of the guardian, the defendant contends that under Section 104-12-2 these allegations are to be taken as true and that the plaintiff having thus admitted that Barbara Blosser was a ward of the court at the time she purported to execute the note, cannot recover on the note.

Section 104-12-2 provides that

"In all actions, allegations of * * * any appointment or authority * * * shall be taken as true, unless the denial of the same is verified by the affidavit of the party his agent, or attorney."

This section is under the general Chapter heading of Verification and refers not to a specific denial, but to a verified denial. Nevertheless we have on numerous occasions held that this section required that the denial be specific as well as verified. See *Brewer* v. *Romney*, 50 Utah 236, 167 P. 366; *Intermountain Ass'n of Credit Men* v. *Mahleres*, 75 Utah 50, 282 P. 1029; *Gray's Harbor Lumber Co.* v. *Burton Lumber Co.*, 65 Utah 333, 236 P. 1102; *Anderson* v. *Union Pac. R. Co.*, 76 Utah 324, 289 P. 146; *Albergo* v. *Gigliotti*, 96 Utah 170, 85 P. 2d 107, 129 A. L. R. 967; concurring opinion in *Petty* v. *Clark*, 102 Utah 186, 129 P. 2d 568.

It should be noted, however, that none of these cases so held in regard to allegations in an answer to which no reply is required by statute. Section 104-11-1, U. C. A. 1943, provides that

"there shall be no reply except: (1) Where a counterclaim is alleged; or, (2) Where some matter is alleged in the answer to which the plaintiff claims to have a defense by reason of the existence of some fact which avoids the matter alleged in the answer."

Section 104-13-11, U. C. A. 1943, provides that

"an allegation of new matter in the answer to which a reply is not required is deemed controverted by the adverse party."

With these statutes in mind we examine the allegations in the answer which the defendant contends the plaintiff ad-

mitted by his failure to file a verified reply specifically denying the same. There was no counter-claim so part one of Section 104-11-1 had no application. The allegations in the answer to which the defendant contends the plaintiff was required to file a reply go only to the allegation of the appointment of the guardian. Since the plaintiff did not seek to introduce evidence in avoidance of this allegation, he was not required by part (2) of Section 104-11-1 to file a reply. Since Section 104-11-1 did not require a reply, the allegations in the answer were "deemed controverted" by virtue of Section 104-13-11. In this situation Section 104-12-2 and the above-cited cases construing it have no application. Plaintiff was not required to file any denial. The allegations of the answer were "deemed controverted" by statute. In this regard the term "deemed controverted" means more than merely to deny *(Swenson* v. *Kleinschmidt,* 10 Mont. 473, 26 P. 198), and is broad enough to put in issue the appointment of the guardian.

The defendant next contends that the trial court erred in finding that the guardianship proceeding was void. The attack on the order appointing a guardian is a collateral one for it is a denial of the legal and binding effect of a judgment in a proceeding not instituted for the ■ purpose of anulling or changing it. See *Mosby* v. *Gisborn,* 17 Utah 257, 281, 54 P. 121; *Intermill* v. *Nash,* 94 Utah 271, 75 P. 2d 157. Unless the proceedings show on their face that the court was without jurisdiction to make the order of appointment or to conduct the proceedings leading thereto, the appointment of a guardian cannot be quesioned in such a collateral proceeding. 25 Am. Jur. p. 35, Sec. 49. The plaintiff contends that it appeared on the face of the guardianship records pleaded that the appointment of the guardian was void because (1) the petition was signed by the alleged incompetent and was, therefore, not a proper petition; (2) it affirmatively appears that no notice was given to the incompetent or to anyone else.

The first proposition has no merit. The petition did not purport to allege that Barbara Blosser, the petitioner, was

mentally incompetent. It merely alleged that because of old age and physical infirmities she was unable to care for her person or to manage her properties. As stated in *Scott* v. *Whitely*, 168 Minn. 74, 209 N. W. 640, 641,

"An incompetent person seldom recognizes the necessity of a guardian. He may be so incompetent as to be unable to appreciate the necessity or utterly incapable of acting. We think also that he may realize his delinquency or imperfections which render him unable to preserve his property from waste and yet have ample capacity to make the usual petition for a guardian and to appreciate the seriousness, importance, and necessity involved. The proceeding is for his benefit. The whole judicial plan for handling estates of incompetents is complete and is primarily for the benefit of the incompetent. Why should he not be allowed to invoke the aid of the court in this respect when he has the necessary capacity to do so? We think he should, and we construe the law as authorizing by implication the making and filing of the petition by the party for whose benefit the law was made. The Legislature has never deemed it necessary to mention the incompetent himself, but has added persons who in its judgment should also have authority to institute such proceedings. No other construction would permit that wholesome protection contemplated by the fundamental law of the state."

We believe that this reasoning is sound. At least in regard to those petitions for the appointment of the guardian wherein it is not alleged that the petitioner is insane, a petition signed by the alleged incompetent is sufficient to invoke the jurisdiction of the court.

The contention that the proceeding was void because of the failure to give notice presents a more difficult problem. The petition for the appointment of the guardian alleged that there were no living relatives of the incompetent (the petitioner) within the State of Utah. In accordance with the prayer of the petition the order appointing the guardian recited that "notice need not be given of the hearing of the petition." Section 102-13-19 specifically provides that the court may appoint a guardian

"after such notice of the time and place of hearing as the court may direct, *to the person supposed to be insane or incompetent* and to such other persons as the court may designate." (Italics added.)

It would appear that under the express wording of this section that some notice to the alleged incompetent would be required. The incompetent is the adverse party. His legal rights are the only rights affected. The proceeding is instituted to take from him the right to manage and control his property. It does not purport to affect the rights of various third parties in regard to his property. Notice is given to relatives and persons having custody of the incompetent because it is assumed that they will protect his interests. The entire proceeding is for the ward's benefit. It is designed primarily to protect his rights. Thus if the court failed to give the required notice to the incompetent the appointment would be void as to him. See *Mosby* v. *Gisborn*, supra. In answer to this proposition the defendant contends that by signing the petition for the appointment of a guardian, the alleged incompetent waived notice and conferred jurisdiction on the court by consent. It is also urged that the requirement that notice be given is for the benefit of the incompetent and that its necessity does not exist when he makes the petition himself. No authority is cited by counsel for the defendant in support of this argument. The reasoning is supported, however, by the case of *Scott* v. *Whitely*, supra.

The plaintiff contends that the statutory requirement of notice to the alleged incompetent could not be waived by him. In *McGee* v. *Hayes*, 127 Cal. 336, 59 P. 767, 768, 78 Am. St. Rep. 57, the California Supreme Court held that:

"The presence of the incompetent could not supply the requirement of the statute that he should be served with notice of the hearing. He was incapable, by reason of his incompetency, to consent to the jurisdiction of the court, or waive any of the steps necessary to confer jurisdiction upon the court, or to make any request that the petition be granted."

To the same effect see *Eddy* v. *People*, 15 Ill. 386; *Behrensmeyer* v. *Kreitz*, 135 Ill. 591, 638, 26 N. E. 704; *North* v. *Joslin*, 59 Mich. 624, 26 N. W. 810; *Morton* v. *Sims*, 64 Ga. 298. See also *In re Sullivan*, 143 Cal. 462, 77 P. 153, wherein

the court held that neither the incompetent nor his attorney could consent to the appointment of a guardian so as to deprive the incompetent of his right to appeal therefrom; and *In re Winnett's Guardianship*, 112 Okl. 43, 239 P. 603, in which the court held that jurisdiction could not be conferred on the court by the consent of the incompetent or by her presence in court or by her signing the petition. The subject is annotated in 23 L. R. A. 737 at 742 and in 26 L. R. A., N. S., 232, 236.

While these authorities are not controlling their reasoning is persuasive. Guardianship statutes were enacted for the benefit of the alleged incompetent and for his protection. They were designed to fend off the attempts of overanxious heirs to prematurely gain control of the property of an aged and unsuspecting relative. It should not prove difficult for those close to such an individual to, by constant nagging and pressure, procure his signature on a petition for the appointment of a guardian. It is shocking to suppose that he may thus be deprived of the control of his worldly possessions and power to manage his own estate without ever having been given an opportunity to appear in court, free from outside pressure, and have the court determine whether or not he is in fact incompetent.

Further, the petition in the instant case recited that the petitioner was physically unable to care for herself or her estate. If these allegations were true, the burden should not have been placed upon her to inquire and keep informed as to the date and the time for the hearing on the said petition. The petition which invoked the jurisdiction of the court alleged that she was not capable of doing so. We believe that notice of place and time for hearing must be given to the alleged incompetent notwithstanding the fact that she signed the petition requesting that a guardian be appointed.

From this holding it follows that the trial court correctly held that the guardianship proceedings were void and that Barbara Blosser had not been deprived of the right to control her property.

By further assignments of error the defendant has urged that the findings of the trial court in which the court found that Barbara Blosser executed the note for valid consideration, without fraud or duress, and its finding that the said Barbara Blosser was in fact mentally competent ■ to execute and deliver the note, are contrary to the preponderance of the evidence. No good purpose can be served by detailing that evidence here. Suffice it to say that we have reviewed the record and there is ample evidence from which the trial court could have made these findings. They are not against the preponderance of the evidence and will not be disturbed on appeal.

Judgment of the lower court is affirmed. Costs to the respondent.

LARSON and McDONOUGH, JJ., concur.

WADE, J., being disqualified, did not participate herein.

LEVERICH, District Judge, participated in the hearing but resigned before publication of the opinion.

MOFFAT, J., participated in the hearing but died before publication of the opinion.