COMMERCIAL STATE BANK OF BRITT, Appellee, v. F. A. BEERS, Appellant.

**BILLS AND NOTES:** Holdership in Due Course—When Issue Immaterial. An executed agreement between the maker of a promissory note and a prospective purchaser thereof, to the effect that, if the note is so purchased, the maker will execute a new note directly to the purchaser, in lieu of the original note, renders quite immaterial the question whether the said purchaser was a holder in due course of the *original* note.

**COMPROMISE AND SETTLEMENT:** Impeaching Compromise by Subsequently Discovered Facts. A plea of fraud in the inception of a negotiable promissory note (in an action by the transferee thereof), followed by a compromise of the action, whereunder the note is surrendered, and a new note is executed for an extended period of time, constitutes an irrevocable waiver of the fraud, *irrespective of subsequently discovered additional facts as to said fraud.*

Headnote 1:   8 C. J. p. 782; 29 Cyc. p. 1138 (Anno.)   Headnote 2:   12 C. J. pp. 339, 346.

*Appeal from Hancock District Court.*—M. F. EDWARDS, Judge.

MARCH 21, 1925.

SUIT in equity upon a promissory note, and to foreclose certain security given therewith. The defense was that the note in suit was a renewal note, and that the original note had been obtained from the defendant by fraud, and that the plaintiff had notice of the fraud and was not a holder in due course. The reply was (1) a general denial; (2) plea of settlement of the claim of alleged fraud. After a hearing on the merits, there was a decree for the plaintiff, and the defendant appeals.—*Affirmed.*

*John Hammill* and *Trewin & Trewin,* for appellant.

*Senneff, Bliss, Witwer & Senneff,* for appellee.

EVANS, J.—I. The plaintiff is the payee of the note in suit. The note in suit is the third in a succession of notes given by the defendant for the same debt. The payee in the first note

1. BILLS AND
NOTES: holder-
ship in due
course: when is-
sue immaterial.

was the Iowa Bankers Mortgage Company. The payee in the last two is the plaintiff. In May, 1919, the defendant, Beers, purchased by subscription 100 shares of stock at par, in the Iowa Bankers Mortgage Compaany. He gave two notes therefor, $7,500 and $2,500 respectively. He purchased the same through Silvers, as agent. Beers was an experienced business man, and knew that he was purchasing stock in a corporation that was in the process of formation. The wrong which Beers suffered, arose, not so much from the then existing fraud perpetrated on him, as from the after conduct of the promoters of the new corporation, who largely absorbed the proceeds of sales of stock in alleged promoting expenses incurred by themselves. The notes given by Beers were offered for sale to the plaintiff bank, which declined to purchase them on any other condition than that Beers should assent thereto and agree to give his own notes therefor to the bank in lieu thereof. The attitude of the plaintiff was communicated to Beers, who consented to such condition, and agreed to execute new notes to the plaintiff therefor. This agreement was performed, both by Beers and by the plaintiff. Pursuant to the initial agreement, the bank purchased the notes and delivered the same to Beers when he executed new notes to the plaintiff itself. Later, Beers paid the $2,500 note. Still later, he declined to pay the $7,500 note, and the plaintiff brought suit thereon. The same defense which is now interposed in this suit was interposed in that suit, as a defense to that note. This was in October, 1920. That suit was compromised and settled. Pursuant to such settlement, the defendant paid the costs, and executed a new note, to become due at a future date, for the full amount of the former note, principal and interest. The note then in suit was thereupon surrendered to him. The note then executed is the note now in suit.

The defendant's brief and argument is predicated almost wholly upon the Negotiable Instruments Act. The claim is that the plaintiff was not a holder in due course of the original note. This claim is predicated, not alone upon the fact that the plaintiff had notice of the alleged fraud, but upon defects in the instrument itself and in the indorsement thereof.

We think the Negotiable Instruments Act has no controlling

application to the case. The title of the plaintiff to the present note is not dependent upon the question whether it was a holder in due course of the original note executed to the Iowa Bankers Mortgage Company. The plaintiff purchased that note pursuant to an *agreement with Beers*. The agreement with Beers was presumptively valid, as such. Beers was competent to make it, and it was not lacking in legal consideration other and distinct from the original consideration, which purported to move from the corporation to Beers in the original transaction. The agreement between plaintiff and Beers, like any other contract, was subject to attack for fraud, if any. The burden of proving such fraud, however, would be upon the defendant. In such a case, it would not be sufficient for the defendant to show fraud perpetrated upon him by the Iowa Bankers Mortgage Company in obtaining the first note. If such first note given to the Iowa Bankers Mortgage Company had been nonnegotiable in form, so that no one could be a holder in due course under it, this would not prevent the defendant from entering into a binding agreement with the plaintiff, in advance of its purchase, to the effect that he would execute his notes to the bank itself, as inducement to the bank to make the purchase. For the purpose, therefore, of determining the binding character of the defendant's agreement, it is not a controlling question whether the note to be purchased was negotiable or not, nor whether the plaintiff, as purchaser, would be a holder in due course.

There is virtually no proof in the record that the plaintiff was guilty of fraud in entering into that agreement with Beers. The question at this point is not whether there was evidence enough to go to a jury; it is whether there was evidence sufficient to justify a court of equity in finding that the plaintiff was guilty of any fraud in obtaining the defendant's note. In the absence of proof of fraud in that very transaction, we have presented a simple case of a simple contract between the plaintiff and Beers, pursuant to which Beers obtained his corporation stock note, and pursuant to which, also, he obtained an issuance of the stock.

II. We think, also, that the plea of settlement is fully sustained. That is to say, assuming that Beers was defrauded by the Bankers Mortgage Company, and that plaintiff was required

2. COMPROMISE
AND SETTLE-
MENT: impeach-
ing compromise
by subsequently
discovered facts.
to show that it had been a holder in due course of the original note, yet the defendant has availed himself of this defense in plaintiff's former suit. If the case had gone to judgment, such judgment could be pleaded as an adjudication of that defense. The fact that the suit was settled is just as available to the plaintiff, provided that its proof of settlement is sufficient to establish it. There is no substantial dispute in the evidence at this point. The defendant did set up this same defense, and the suit was thereafter settled. The note sued on was surrendered to the defendant. The future liability of the defendant was acknowledged and fixed by a new instrument. This represented the net result of the settlement. The main consideration moving from the plaintiff was a substantial extension of time, and the surrender of the note that was then due. A settlement necessarily settled every issue involved in that litigation, whether tendered by petition or by answer. It is contended for the defendant that he did not then know all the facts, and that material facts came to his knowledge thereafter. If only a question of mere waiver were involved, such argument would have its weight. But the mutual settlement of a controversy or suit is not subject to mere newly discovered evidence. It may be attacked for fraud or concealment by the other party, the same as any other contract, and not ordinarily otherwise. If mere newly discovered evidence should be deemed sufficient to impeach a former settlement, then there could be no security to either party in any settlement. We see no escape from saying that the plea of settlement was good, as against the defense of fraud once settled. *Farmers Sav. Bk. v. Friar*, 199 Iowa 885, and cases cited.

Our conclusions at this point render it quite unnecessary that we follow counsel through the mazes of the Negotiable Instruments Act, some interesting features of which have been pressed upon us, with pardonable ingenuity.

The district court properly entered decree for the plaintiff, and such decree is affirmed.—*Affirmed.*

All the other justices concur.