OSCAR HENDERSON, Appellee, v. ALBERT P. HOLT, Appellant.

**BILLS AND NOTES:** Actions—Sufficiency of Proof. The payee in
1 possession of a promissory note the execution of which is not de-
nied makes a prima-facie case for recovery by the simple intro-
duction of the note in evidence.

**BILLS AND NOTES:** Fraud—Nonavailability. Fraud, in order to be
2 available as a defense to a promissory note in the hands of the
original payee, must, of course, in some manner be brought home
to the said payee.

Headnote 1:  8 C. J. p. 1044.  Headnote 2:  8 C. J. p. 780.

*Appeal from Hamilton District Court.*—E. M. McCALL, Judge.

DECEMBER 15, 1925.

REHEARING DENIED APRIL 9, 1926.

ACTION at law to recover on a promissory note executed by
the defendant to the plaintiff. Fraud is pleaded in answer.
Upon the conclusion of defendant's testimony, the court sus-
tained the motion of plaintiff for a directed verdict, and entered
judgment as prayed. Defendant appeals.—*Affirmed.*

*F. J. Lund* and *R. G. Remley,* for appellant.

*Henderson & Jones,* for appellee.

DE GRAFF, J.—Plaintiff, as payee of a promissory note,
sues the defendant, as maker thereof, to recover the sum of
$1,000, with interest, attorney's fees, and costs. On the trial,
plaintiff introduced the note, and rested. This
was his legal privilege. *Bigelow v. Burnham,*
90 Iowa 300; *Tuttle v. Becker,* 47 Iowa 487.

1. BILLS AND NOTES: actions: sufficiency of proof.

It is obvious that, unless a valid defense is alleged and
proved, plaintiff is entitled to judgment. At the outset we
naturally inquire, What defense is interposed by the defendant-
maker? It is fraud; but with the specific allegations in the
answer we are not concerned on this appeal, unless it is de-
termined, in the first instance, under the theory of the case as
submitted to the trial court, that the plaintiff was a party to the
fraud, as alleged.

At the close of the defendant's testimony, plaintiff's motion for a directed verdict was sustained on each and every ground recited therein. It is apparent from the record that the ruling of the court was primarily based on

2. BILLS AND NOTES: fraud: nonavailability.
the ground that there is no testimony proving or tending to prove that the plaintiff made any representations whatsoever as to any facts upon which the defendant relies or is entitled to rely, on his charge of fraud, and that plaintiff did not participate in any alleged misrepresentation, either as principal or agent, or by reason of any fraudulent conspiracy between the plaintiff and other parties who are charged with the making of the alleged misrepresentations. This finding, which is controlling, we do not hesitate to indorse.

A brief summary of the facts may be made, and it is to be observed that all the evidence was offered by the defendant. It appears that one Alex Henderson agreed, in writing, to act as trustee for certain subscribers in an unincorporated association bearing the name of the Oklahoma Drilling Syndicate, and composed, at its maximum strength, of some twenty-five or more Story County, Iowa, residents, mostly farmers.

The purpose of this association was the owning and developing of certain oil fields in the state of Oklahoma; but it was organized at Story City, where it maintained its principal place of business. Under the terms of this trust arrangement, the business operations of the so-called syndicate, including the care, development, and disposal of leasehold rights and privileges in the lands described in the agreement, were managed exclusively by the trustee, who was to receive the proceeds of all subscriptions and all the earnings. It was further provided that, when the subscribers should have had the entire amount of the respective subscriptions returned to them in dividends, it became the duty of the trustee and the advisory committee to incorporate the association under the laws of the state of Oklahoma. The proposition never reached this contemplated stage of development, but apparently the subscribers undertook in good faith to engage in this particular plan of oil speculation.

The sums contributed were comparatively small, and it may be said that many of the shareholders, including the defendant in this action, personally visited the oil field, prior to making

their investments. Needless to say that they knew, or must have known, that they were engaging in a hazardous undertaking; but this is beside the point in the determination of this appeal.

It further appears that a man by the name of Ogaard was employed, apparently by the trustee, to sell subscriptions to shares of stock in this association, and it was through him that the defendant Holt became interested in the plan. The only connection which the plaintiff had with the initial visit was to drive Ogaard to the defendant's farm in a Ford and introduce him to the defendant.

Plaintiff is a retired farmer, and an old resident of Story County. He was then living in the town of Story City, and had been personally known to the defendant for several years.

It may be assumed, although it is not definitely shown, that at this particular time the plaintiff was the holder of two shares in the association. The only statement of any consequence made by this plaintiff to Holt on this introductory visit, as found in the testimony of the defendant, is this:

"Mr. Henderson said that it would be a good thing to go down and see; that he had been down there and seen for himself; and that it looked good."

The defendant further testified that he did not remember seeing the plaintiff again from that time until the note in suit was delivered to the plaintiff, under the circumstances presently stated.

After several visits to the defendant by Ogaard and his subagent, named Weir, at which times the plaintiff was not present, the defendant consented to make a personal trip to Oklahoma, to inspect the fields and determine for himself whether he should invest in the oil game. He did take the trip and inspected the properties, and he testified that he saw the wells working and some of the machinery.

"I think they showed a man all they had to show. I took $1,000 worth of stock in the company that same night in the hotel. They promised me that he [Mr. Fell, the oil expert] would stand back of it if I seen the proposition didn't come to my satisfaction; then I could cancel it."

As a matter of fact, the defendant never did cancel the

contract or give notice of rescission; and the evidence discloses that the properties owned by the association continued at all times to have some value, although the drilling proposition was abandoned, due to the decreased selling value of oil and the depletion of funds in the treasury of the association.

It is apparent that whatever representations were made by Ogaard or Fell to this defendant in Oklahoma are not chargeable to this plaintiff. He had nothing to do with the Oklahoma transaction, and was not in Oklahoma at the time.

In the argument upon this appeal, the appellant insists that, regardless of any personal responsibility against plaintiff for the pleaded fraud, he is none the less liable by reason of his membership in the oil syndicate, on the theory that the members of an unincorporated association, under the instant record, are partners, and as such are liable for the acts of its agents, within the scope of their authority. No such liability is pleaded, and no such issue was presented or determined in the trial below. This court does not entertain propositions assigned and argued for the first time on appeal.

One other phase of this case, however, may be noticed. The note in suit is not the original note executed by the defendant to the drilling syndicate. Is it a renewal note? No. What are the facts? Subsequently to the giving of the original note, the syndicate, being in need of money, attempted to sell said note, and for this purpose the plaintiff was interviewed. He refused to take the note as it was, but said that he would take a note payable directly to himself. The original note bore date June 3, 1920, and was payable one year after date. The conversation relative to the giving of the note in suit was in August, 1920. The defendant was advised that plaintiff refused to take the original note, and that "he [plaintiff] didn't want anything to do with the oil transaction. He didn't want anything to do with any agreement with Fell before Holt signed up for the stock."

"That agreement was that, if it didn't prove good, he [Fell] would be back of it. I took the stock somewhat on the strength of Fell's agreement. Last term I testified that I took the stock on the strength of that agreement."

Thus it is seen that the plaintiff-payee was never a holder

of the original note.  The note in suit constitutes a new and independent obligation.  The plaintiff did advance $1,000 to the original payee, and in consideration thereof the old note of the defendant was canceled and returned to him, and the stock for which he had subscribed, and which he then had in his possession, was paid for by this later transaction.  It was, in effect, a loan by the plaintiff for the benefit of the defendant, whereby the obligation of the defendant to the original payee was paid, and a new and valid obligation created by him in favor of this plaintiff.  Under such circumstances, the defendant is not in a position to make good his plea of antecedent fraud as against this plaintiff, who was not a party in any manner to the alleged misrepresentation.  Nor is it shown that there was any collusion or fraud in the arrangement whereby the new note was brought into being, or that plaintiff had notice or knowledge of the fraud subsequently claimed and pleaded by the defendant.  The money was advanced by this plaintiff in good faith.  The legal effect is the same as though the plaintiff took the note on a direct loan to the defendant in the first instance, to pay for his stock subscription.  See *Farmers Sav. Bank v. Grange,* 199 Iowa 978; *Commercial St. Bank v. Beers,* 199 Iowa 864.

With this view of the facts, the defense of fraud is not available to the defendant against this plaintiff.  We deem it unnecessary to consider other errors urged on this appeal.  Plaintiff's motion for a directed verdict was properly sustained.  Wherefore, the judgment entered is—*Affirmed.*

Faville, C. J., and Stevens and Vermilion, JJ., concur.