GRIMES SAVINGS BANK, Appellee, v. MAGGIE McHARG, Appellant.

**BILLS AND NOTES:** Holdership in Due Course—Jury Question. The court has no right to say that the holder of a negotiable note is a holder in due course and to direct a verdict accordingly when *conflicting* inferences *may* be drawn from the facts, whether viewed individually or collectively. (See Book of Anno., Vol. 1, Sec. 9519, Anno. 9 *et seq.*)

**BILLS AND NOTES:** Actions—Undenied Signature—Effect.. The mere introduction in evidence of promissory notes sued on makes a prima-facie right of recovery when the signatures to said notes are not denied under oath. (See Book of Anno., Vol. 1, Sec. 11218.)

Headnote 1:    38 Cyc. pp. 1568, 1569.    Headnote 2:    8 C. J. pp. 1004, 1045.

Headnote 1:    26 R. C. L. 1068.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

MAY 10, 1927.

REHEARING DENIED OCTOBER 1, 1927.

Action at law to recover on three negotiable promissory notes. Defendant, in answer, pleads fraud. Plaintiff, in reply, pleads that it is a holder in due course. At the close of all the testimony, the trial court, on motion of the plaintiff, directed a verdict, and entered judgment thereon. Defendant appeals.— *Reversed.*

*C. E. Hunn* and *H. S. Hunn,* for appellant.

*J. G. Myerly,* for appellee.

DE GRAFF, J.—The trial court, on motion of the plaintiff-bank, at the conclusion of all the testimony, directed a verdict in its favor. Does the evidence bearing on the

1. BILLS AND NOTES: holder-ship in due course: jury question.

bona fides of the bank in this transaction warrant a submission of the case to the jury? That is the primary question on the instant appeal, and the answer will be made presently and briefly.

Plaintiff's petition is in three counts, which set forth, respectively, three negotiable promissory notes, alleged to have been executed by the defendant. The first count predicates recovery on a "myself" note of $1,250, dated October 4, 1919, payable six months after date, and indorsed by the defendant-maker; the second count involves a "myself" note of $1,250, bearing date October 4, 1919, payable six months after date, and similarly indorsed; the third count involves a note of $2,500, bearing date December 17, 1919, signed by the defendant, and payable to the plaintiff-bank on or before six months after date.

The petition further alleges that plaintiff is the owner and holder of said notes, and that the same are due and wholly unpaid. Judgment is demanded in the aggregate amount of said notes, with interest.

Upon the trial, plaintiff offered in evidence the respective notes known in the record as "Exhibits A, B, and C," and rested. To this offer defendant entered an objection that the

2. BILLS AND NOTES: actions: undenied signature: effect.

offer was incompetent, irrelevant, and immaterial, the notes not having been identified. The objection was overruled, and exception saved.

Thereupon the defendant moved for a directed verdict, on the ground that the notes had not been identified, nor proof made of the execution thereof or that the plaintiff is the owner and holder thereof. This motion was overruled, and properly so.

The genuineness of the signature of the maker and indorser was not denied by the defendant under oath. Under the common-law rule, a plea of *non est factum* placed the burden upon the plaintiff to prove the execution of the written instrument, including the genuineness of the signature. 8 Corpus Juris 998. Until this was done, the instrument was not admissible in evidence. A statute of this state changes the rule. Section 11218, Code of 1924. It follows, therefore, that the burden of proving the execution of the notes in question can be placed upon the plaintiff-holder only by a sworn denial. *Farmers & Trad. St. Bank v. First Nat. Bank*, 201 Iowa 73.

Plaintiff was the holder of bearer paper as to two notes, and the payee named in the third note in suit. The production and profert of the paper by the plaintiff-bank under such circumstances constitute sufficient evidence of title to establish a prima-facie case. This is a well established principle in the law of negotiable paper. *Henderson v. Holt*, 201 Iowa 1017; *Marshak v. Fontana*, 195 Iowa 511. The trial court properly overruled defendant's motion for a directed verdict at this stage of the proceedings.

We now turn to the answer of the defendant. Fraud in the inception of the notes is the defense pleaded. The issue tendered by the defendant placed the burden of proof at this point upon the defendant. The answer of the defendant is saturated with allegations of fraud. We deem it unnecessary to reiterate in this opinion the specifications, as they have to do with the promotion scheme of the erstwhile Associated Packing Company and the representations made by the soliciting agents of said company in the selling of its stock by subscription contracts. It is sufficient to state that, under the record, the defendant established the pleaded fraud, and, had the plaintiff rested at this point, the defendant would have been entitled to a directed verdict.

The issues tendered by the plaintiff in reply involve not only a general denial of the allegations of defendant's answer, but also the bona fides of the purchase of two of the notes in

suit, and that the defendant has estopped herself from setting up the defense of fraud alleged to have been resorted to by the agents and salesmen of the Associated Packing Company in procuring the original $2,500 note, in that the defendant had notice sufficient to put her on inquiry as to all the fraud which she complains of in her said answer, and that, with knowledge of such fraud, the defendant, by taking up the said first note of $2,500 and giving a new one therefor, waived her right to plead such fraud as a defense to the $2,500 note in suit.

It may be stated that the defendant, in her answer to plaintiff's petition, pleaded that the cashier of the plaintiff-bank obtained her renewal note through fraud and deceit, and in support of her claim, upon the trial testified that, in her business transactions with the plaintiff-bank, she had confidence in the cashier, relied upon him, and trusted him; that her deposit box was in the bank where she kept her government bonds, which were given to the agents of the packing company in part consideration for her stock subscriptions; that she was a depositor in said bank; that she had gone to the home office of the Associated Packing Company after she had signed her stock subscription contracts and given her promissory notes to the selling agents; that she had explained the cause of her worry to Wolfe Teitel, financial agent of the company, and was assured by Teitel that "he would get all of the papers back and give them to her;" that she had received a letter from the cashier of the plaintiff-bank, telling her that he had the $2,500 note; that, after the cashier called her by phone, she went over to see him; that the cashier told her that if she did not come over she would get herself into trouble; that she went over in December; that she had previously sent him a $75 check for interest, telling him to turn it in if he thought it was right for him to do so, and that she told him these were "option notes;" that, upon her visit to the bank, the cashier produced the original $2,500 note. Her testimony then reads as follows:

"He said he got it of the salesman of the Associated Packing Company. I said I didn't see how that could be. I said I never gave them anything but an option note, and they said the company would keep these notes. Told him that was notes that I never expected to pay, because they had told me so. I told him these notes were options to pay for stock. He had

another piece of paper he brought to me. I was feeling so bad then, I was worrying and crying, and I didn't read the paper over. He wanted me to put my name down, and said the company would make it all right with me if I just put my name down on this piece of paper. I have learned since it was a new note. He fixed it out to get me into more trouble. I didn't want to sign anything, and he insisted I should, and things would be made all right. It would make no difference if I signed that any more than if I didn't sign it,—I would get my papers back. I told him of my visit to the office of the company, trying to get my papers back. I told him plain and fully.''

It is quite evident, from a review of the testimony, that the issue of waiver and estoppel with respect to the renewal note was one for the jury. The defendant pleaded and relied not only on the defense of fraud in the inception of the original $2,500 note, but also on the alleged fraud practiced upon her at the time the renewal note was given. True, the burden was upon her in this particular. The burden of proving bona fides in the negotiation and purchase of the other two notes was upon the plaintiff. Section 3060-a59, Code Supplement, 1913 (Section 9519, Code of 1924).

It was not necessary or essential that the defendant plead a rescission. The defendant did not receive anything of value at the time she executed and delivered the original notes to the selling agents of the Associated Packing Company, and she never thereafter received anything of value for said notes.

We now recur to the original and primary question in this case. Should the issues have been submitted to a jury for determination? We answer in the affirmative. No purpose will be served by setting out the evidence. It will suffice to state our conclusion.

It is apparent, from a review of the cases, that there are two lines of decisions involving the question of submitting to the jury the bona fides of the purchaser of negotiable paper, but it must be borne in mind that any case of this character must be bottomed on its own facts and circumstances. We no longer adhere to the rule that in every suit by an indorsee of a negotiable instrument the question whether the plaintiff acted in bad faith must be submitted to the jury, no matter how conclusively his good faith may be proven by the uncontradicted

evidence.  See *Second Nat. Bank v. Scanlon,* 196 Iowa 1305;
*First Nat. Bank v. Brown,* 197 Iowa 1376; *First Nat. Bank v.
Dutton,* 199 Iowa 468.

The rule, if it may be termed a rule, is stated in *Commer-
cial Sav. Bank v. Colthurst,* 195 Iowa 1032:

"If conflicting inferences may be drawn from the facts,
viewed individually or collectively, then the jury must decide.
A court may be justified in refusing to submit the question of
good faith to the jury, but only in a case in which the evidence
offered by the plaintiff holder is uncontradicted, his witnesses
stand unimpeached, directly or circumstantially, and no reason-
able or fair inferences tending to prove bad faith can be drawn
by reasonable men from the facts and circumstances surround-
ing the negotiation and purchase of the instrument."

See, also, *Cedar Point St. Bank v. Youtz,* 200 Iowa 86;
*Sweet v. Security Sav. Bank,* 200 Iowa 895; *Kenwood Lbr. Co.
v. Armstrong,* 201 Iowa 888.

We reach the conclusion that the record in this case brings
into play the rule stated in the *Colthurst* case, supra, and that
the facts present a question for the determination by the jury,
notwithstanding the direct testimony of the officers of the bank
who purchased the notes that the bank purchased the same in
good faith and without knowledge of the pleaded fraudulent
acts.  In brief, we are inclined to hold, and do hold, that this
case is not of the character in which the evidence is so indubit-
able and conclusive that the trial court should have directed a
verdict, as a matter of law.  Clearly, a jury question was pre-
sented with reference to the renewal note.

The judgment entered is—*Reversed.*

EVANS, C. J., and ALBERT, MORLING, and KINDIG, JJ.,
concur.