NEWTON NATIONAL BANK, Appellee, v. STRAND BAKING COMPANY, Appellant.

No. 44077.

FEBRUARY 8, 1938.

Boardman & Cartwright and Cunningham & Brierly, for appellee.

E. N. Farber and R. A. Rockhill, for appellant.

DONEGAN, J.—This is an action at law .brought by the Newton National Bank, Newton, Iowa, against Strand Baking Company, of Marshalltown, Iowa, asking judgment in the sum of $1402.50, with interest, on a check of the defendant company drawn on the Security Savings Bank, Marshalltown, Iowa, payable to the order of R. E. Hicks. The petition alleged that said Hicks, for value received, endorsed said check to plaintiff; that plaintiff endorsed said check and caused it to be presented in due course of business to Security Savings Bank at Marshalltown, Iowa, and demanded payment thereof, which was refused; that notice of the presentation of such check to said bank and its refusal to pay same was given to defendant and demand made for payment, which has not been made; that plaintiff is the owner and holder of said check and no part thereof has been paid. The defendant filed an answer in four divisions, substantially as follows: Division 1 contained a general denial; division 2 plead the defense of fraud and misrepresentations on the part of Hicks, and knowledge on the part of appellee sufficient to cause it to take said check for collection only; division 3 denied that appellee was a holder in due course; and division

alleged that plaintiff had sufficient knowledge of fraud perpetrated upon the defendant by Hicks, in procuring said check, to put it on inquiry, and that plaintiff had failed to make such inquiry.

The case was tried to a jury, and, at the close of the plaintiff's evidence, the defendant moved for a directed verdict in its favor. This motion was overruled and evidence was introduced by the defendant. At the close of such evidence, plaintiff moved the court for a directed verdict in its favor. This motion was sustained, a verdict was returned in favor of the plaintiff, and judgment entered thereon. From such judgment, and from all adverse orders and rulings of the trial court, the defendant, Strand Baking Company, appeals.

The material facts out of which this case arose are substantially as follows. On August 12, 1935, one R. E. Hicks visited the plant of the defendant company at Marshalltown, Iowa, representing himself to be a salesman for Swift & Company of Omaha, Nebraska, and offered to sell the baking company 100 cans of shortening. The price was satisfactory and the baking company agreed to buy, and stated that payment would be made upon delivery to defendant company's plant. To this statement in regard to payment on delivery Hicks replied that the shortening would be trucked from Omaha to Newton, where it would arrive in a day or two; that when it arrived at Newton he would have to have a draft to give the truck driver in full payment before the shortening would be released; that he would then reship it to defendant company at Marshalltown; but that, in order to purchase a draft at Newton, with which to pay the truck driver, he must have a check for the full amount. Pursuant to this arrangement, the baking company issued a check for the full amount and delivered it to Hicks, but, before doing so, it instructed the bank upon which the check was drawn to stop payment until the shortening should have been delivered to the baking company. On the 21st day of August, 1935, the check with Hicks' name endorsed thereon was deposited by Hicks in the plaintiff bank at Newton, Iowa, and the full amount of the check was credited to Hicks in an account in his name which he had maintained in said bank for approximately a year. The check cleared through the Merchants National Bank of Cedar Rapids, Iowa, and the Commercial State Bank of Marshalltown, before reaching the Security Savings Bank of Marshalltown,

upon which it was drawn. When this check reached the Security Savings Bank, the bank called the defendant baking company and, on being told that the shortening had not been delivered, payment was refused, the words "Stop Payment" were written across the face of the check in red ink, and the check with these words thereon was returned to the Commercial State Bank. According to the evidence of appellant, the check was presented to the Security Savings Bank on the afternoon of August 22, 1935, by Commercial State Bank, and was returned to the latter bank later in the afternoon of the same day. The record is very indefinite as to just what was done with this check after it was returned to the Commercial State Bank, although there is sufficient in the record to suggest, at least, if not to support the inference, that it returned to plaintiff by the reverse of the route it had travelled, going from the Commercial State Bank in Marshalltown to the Merchants National Bank in Cedar Rapids, and from the latter bank to the plaintiff bank in Newton. The record is also very unsatisfactory as to what, if any, notice was given to the plaintiff bank in regard to the condition attached to the negotiation of the check in Newton and the stop payment order given the Security Savings Bank by the baking company at the time it was issued. There is evidence in the record indicating that a wire was received by the plaintiff bank from the Merchants National Bank of Cedar Rapids in regard to this check, but neither this wire nor the contents thereof were introduced in evidence, and there is nothing to show just what information it conveyed to the plaintiff bank, or when, with reference to the withdrawal of the funds in the Hicks account, it was received by the plaintiff bank. On the 23rd day of August, 1935, however, which was before the check was returned to the plaintiff bank, Hicks withdrew from his account in the bank all except a few dollars standing to his credit therein, and the check remained unpaid.

On the trial of the case the plaintiff introduced the check itself and the testimony of Mr. Lane, the president of the Security Savings Bank, on which the check was drawn. The check, as introduced, had written across the face thereof the words "Stop Payment", but the evidence given by the witness showed that these words were not on the check at the time it was issued to Hicks or when deposited by Hicks in plaintiff bank, but were written thereon by the Security Savings Bank

when the check reached this bank for payment. After plaintiff had introduced this evidence and rested, the defendant moved for a directed verdict in its favor, on the ground that the evidence introduced by plaintiff failed to make a prima facie case. This motion was overruled, and the defendant then proceeded to introduce its evidence. After the defendant had introduced its evidence and rested, the plaintiff moved for a directed verdict in its favor on eight separate grounds, and this motion was sustained. Appellant has alleged nine separate grounds of error upon which it relies for reversal. The first of these grounds goes to the alleged error of the trial court in overruling the appellant's motion for a directed verdict, and the remaining eight grounds are directed, respectively, to the errors alleged to have been committed by the trial court in sustaining the appellee's motion for a directed verdict as to each of the grounds set out therein. As the errors relied upon by appellant, both in overruling its motion for a directed verdict and in sustaining the appellee's motion for a directed verdict, as well as the arguments in support of such alleged errors and in resistance thereto, are to a considerable extent interwoven, we shall not attempt to consider these alleged errors separately and in detail.

Ordinarily, in a case such as this, the most important question to be determined would be: What, if any, notice or knowledge did the plaintiff bank have of the circumstances and conditions under which the check was issued and delivered to Hicks, at the time the funds representing the check were withdrawn from Hicks' account in this bank? In the trial of this case, however, the plaintiff apparently avoided introducing any evidence on this phase of the case, and the evidence introduced by the defendant is far from convincing. The attitude of the parties is explained, perhaps, by their divergent theories as to which of them had the burden of proof in regard to such notice or knowledge. The appellee contends that the burden was on the appellant to show that appellee had such notice or knowledge, and the appellant contends that the burden was on the appellee to show that it did not have such notice or knowledge. The correctness of the court's rulings on both the plaintiff's motion for a directed verdict and the defendant's motion for a directed verdict depends upon a determination of the question as to which of the parties had such burden, under the evidence presented in the trial of this case.

As to the error alleged in the overruling of appellant's motion for a directed verdict, the appellant's theory is that, because appellee's evidence showed that the check was issued conditionally, the burden was on the appellee to show that it had no notice of the condition, when the money representing the check was paid to Hicks in violation of the condition. Appellee's theory is that, having presented the check and shown nonpayment, it made out a prima facie case, under section 9519, Code of 1935, *as a holder in due course,* and the burden was on the appellant to show that notice of the condition attached to the check was conveyed to the appellee before the funds in the account of Hicks were exhausted. As to the errors alleged in sustaining appellee's motion for a directed verdict, the appellant's theory is that the evidence introduced by it, not only further elaborated the evidence of the appellee as to the condition attached to the check, but sustained the defenses set up in its answer; that this evidence was sufficient to show that the check was procured by Hicks through fraud, that it was without consideration, that the appellee had sufficient knowledge to put it on inquiry before paying out the funds representing the check, and that the appellee was not a holder in due course; and that, appellant having shown these matters, the burden was on the appellee to go forward with evidence tending to negative them. The appellee's theory as to this phase of the case is that the evidence introduced by the appellant failed to sustain any of the allegations of its answer, and that, appellee having already made out a prima facie case, and there being no evidence to support the appellant's position, the appellee was entitled to a directed verdict.

As sustaining the overruling of appellant's motion for a directed verdict, appellee relies on the provision of section 9519, Code of 1935, that:

"Every holder is deemed prima facie to be a holder in due course."

If the evidence of the appellee went no further than to introduce the check and show that it had not been paid, appellee's position would be tenable. Appellee, however, went further and showed that, at the time the check was issued and delivered to Hicks, there was an understanding between the appellant baking company and Hicks that, when the shortening arrived at

Newton, in a day or two, Hicks was to use the check in purchasing a draft for the full amount of the check with which to pay the driver of Swift & Company's truck for the shortening; that Hicks was then to reship the shortening to defendant at Marshalltown; and that the check would not be cashed at the Security Savings Bank until the shortening arrived at the defendant company's plant in Marshalltown. Under this agreement, Hicks had no authority to use the check for any other purpose, except to purchase a draft with which to pay for the shortening when it arrived in Newton. Section 9515, Code of 1935, provides:

"The title of a person who negotiates an instrument is defective within the meaning of this chapter when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or *when he negotiates it in breach of faith,* or under such circumstances as amount to a fraud." (Italics ours.)

The evidence introduced by appellee showed that the check was not used to purchase a draft at Newton to pay Swift & Company for the 100 cans of shortening purchased by appellant, and, in negotiating the check to the appellee for some other purpose, Hicks was committing a "breach of faith" under section 9515, and his title was defective.

Immediately following the portion of section 9519, already quoted, is the further provision:

"but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

And, to prove that it was a holder in due course, the appellee would be required to show that it came under the provisions of section 9512, Code of 1935, which states that:

"A holder in due course is a holder who has taken the instrument under the following conditions: * * *

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

■■■ We see no way to escape the conclusion that, at the

time appellant's motion for a directed verdict was made, the evidence introduced by plaintiff showed that the check was subject to a condition; that this condition had not been complied with when the check was negotiated to the appellee; that the check was negotiated by Hicks in breach of faith; that the title of Hicks was, therefore, defective; that the burden was, therefore, on the appellee to show that it was a holder in due course; and that, in order to show that it was a holder in due course, the appellee was under the burden of showing that, at the time it took the check from Hicks, it had no notice of any infirmity in the check or defect in the title of Hicks. But, while the trial court erred in overruling appellant's motion for a directed verdict, appellant cannot avail itself of such error on this appeal.

■■■ After its motion had been overruled, appellant proceeded to introduce evidence, and, at the close of the evidence, it did not renew its motion. We have repeatedly held that this amounts to a waiver of any error in overruling the motion, and cannot be made the basis for a reversal in this court. Ball v. Davenport, 170 Iowa 33, 152 N. W. 69; Boyd v. Buick Automobile Co., 182 Iowa 306, 165 N. W. 908; Yaus v. Shawmutt Egg Co., 204 Iowa 426, 213 N. W. 230. What we have said, however, in regard to the error in overruling appellant's motion for a directed verdict, will be applicable to a consideration of the errors alleged to have been committed by the trial court in sustaining appellee's motion for a directed verdict in its favor.

Coming to the alleged errors of the trial court in sustaining appellee's motion for a directed verdict in its favor, we are unable to find anything in the evidence introduced by the appellant that changed the situation confronting the appellee at the close of its evidence, or that relieved appellee of the burden of going forward with evidence to show that it was a holder in due course. In view of the fact that a new trial must result in this case, and, because the evidence on such new trial may not be the same as that shown by the record in this case, we refrain from discussing or determining the sufficiency of the evidence introduced by appellant to sustain the defenses set forth by it in its answer in regard to fraud, failure of consideration, and notice to the appellee of defect in the title of Hicks. The evidence introduced by the appellant did not change the fact situation, in regard to the condition attached

to the check and the violation of such condition, from what it was at the close of plaintiff's evidence. Assuming that the evidence introduced by the appellant was not sufficient to support the·allegations of its answer in regard to fraud or failure of consideration or notice of defect in Hicks' title to the check, which we neither consider nor determine, the appellee's own evidence, as well as the evidence introduced by appellant, was sufficient to show that there was a condition attached to the check when issued; that there had been a violation of this condition which amounted to a breach of faith and rendered Hicks' title to the check defective when it was negotiated to the appellee; and that this placed upon the appellee the burden of showing that it was a holder in due course. In order to sustain this burden, appellee was required to show that it had no notice of any infirmity in the instrument or defect in the title of Hicks. With this burden resting upon the appellee the trial court could not, as a matter of law, find that the appellee was entitled to recover and sustain its motion for a directed verdict in its favor.

In determining the question before us in this case we are not called upon to consider the wisdom or the ethics of the appellant's action in issuing this check to Hicks, with the condition attached to the use of the check by Hicks and a stop order on the bank on which it was drawn at the very time it was issued. The case here presented does not involve a decision as to the comparative negligence of the appellant in issuing a check to Hicks and that of the appellee in taking such check from Hicks and paying out money in reliance thereon. As the case is here presented to us, we are dealing with a record which seems to have resulted from the caution and ingenuity of opposing attorneys, and which presents the purely technical question as to which of the parties had the burden of going forward with evidence in regard to notice, or the lack thereof, on the part of the appellee, of the condition under which the check was issued and delivered to Hicks.

That there was a condition attached to the check when issued and delivered to Hicks, which placed limitations on his right to negotiate it, does not seem to be seriously disputed by the appellee, and its principal argument as to this proposition is, that the condition attached to the check was complied with when the check was negotiated, and that, therefore, there was no breach of faith on the part of Hicks which would make his title

defective and cast upon the appellee the burden of proving that it did not have notice of the condition. As the condition attached to the check was that it should be used at a bank in Newton for the purchase of a draft for the full amount of the check with which to pay the driver of Swift & Company's truck for 100 cans of shortening which had been purchased through Hicks; and, as the evidence is clear that the check was not used to purchase such draft to Swift & Company, and the only draft to Swift & Company, paid for out of the proceeds of the check, was for less than one-half the amount of the check, and there is nothing to show that this draft was in payment for any part of the shortening ordered by appellant, or for any shortening, we do not think that this evidence could be held, as a matter of law, to show a compliance with the condition attached to the check. Moreover, we find nothing in the evidence to indicate that, under the condition attached to the check, Hicks had any authority whatever to use the check for any other purpose except to purchase a draft at Newton, payable to Swift & Company, for the full amount of the check; and, in depositing the check to his own account and in drawing from such account all but a few dollars thereof, without purchasing a draft for the full amount of the check payable to Swift & Company, it seems to us that it can hardly be said that Hicks did not negotiate the check in a breach of faith, and that his title in so negotiating it was not defective. Most of the cases cited by appellee deal with the question of fraud, and none of them have reference to a condition attached to the negotiation of a negotiable instrument such as is involved in this case. At most, we think the evidence was such that the question, whether the condition under which the check was issued was complied with when it was negotiated to the appellee, would have been for the jury, and in no event could the trial court find, as a matter of law, that the condition had been complied with and that there was no breach of faith on the part of Hicks when he negotiated it to the appellee. Perry Savings Bank v. Fitzgerald, 167 Iowa 446, 149 N. W. 497; Anthon State Bank v. Bernard, 194 Iowa 1090, 191 N. W. 283; Grimes Savings Bank v. McHarg, 204 Iowa 322, 213 N. W. 798; Pierce v. Lichtenstein, 214 Iowa 315, 242 N. W. 59.

 In what we have said we must not be considered as passing in any way upon the merits of the case, or as even sug-

546

gesting that the appellee had knowledge of the condition attached to the check at the time the check was negotiated to it by Hicks. What we hold, and all we hold, is that there was a condition attached to the negotiation of the check; that this condition was not complied with; that Hicks violated the condition and was guilty of a breach of faith when he negotiated the check to the appellee; that, because of this breach of faith, Hicks' title was defective when he negotiated the check to appellee; and that the burden was, therefore, on the appellee to prove that it acquired the title to the check as a holder in due course. As appellee's own evidence showed the condition under which the check was issued, and, as the appellant's evidence neither showed lack of notice of this condition on the part of appellee, nor any other facts that would relieve the appellee of the burden placed upon it, we are constrained to hold that the trial court erred in sustaining appellee's motion for a directed verdict at the close of appellant's evidence. Because of such error, the judgment and rulings appealed from are hereby reversed.—Reversed.

ANDERSON, KINTZINGER, MILLER, RICHARDS, HAMILTON, and SAGER, JJ., concur.

STIGER, C. J., takes no part.