## ALBERGO v. GIGLIOTTI et al.

No. 5971.   Decided December 12, 1938.   (85 P. 2d 107.)

*Harley W. Gustin,* of Salt Lake City, for appellants.

*Marl D. Gibson,* of Price, and *B. W. Dalton,* of Los· Angeles, Cal., for respondents.

FOLLAND, Chief Justice.

This case is heard on appeal and cross-appeal from a judgment of the District Court of Carbon County in an action on a note and mortgage for foreclosure and sale and for judgment that the interests claimed by defendants are without legal validity. The court gave judgment for the plaintiff except for holding that the plaintiff must repay to Rosario Gigliotti the amount the Gigliottis paid the county for its deed, before his title be declared void as against plaintiff. Plaintiff filed a cross-appeal as to the latter portion of the judgment.

Plaintiff's cause of action is based on a negotiable note for $6,000, dated August 22, 1927, payable five years after date, and a mortgage for the same date given to secure it. Payments of principal and interest were made from time to time, but at the time of suit there were owing $5,685.45 principal and $1,032.42 interest, the last payment being dated June 2, 1936. Felice W. and Maria Gigliotti were the makers of the note and the mortgage. The mortgage, which recited the note it secured, was duly recorded on August 25, 1927. By its terms the mortgagors agreed "to pay all taxes and assessments on said premises * * * and in case of suit to foreclose, to pay all court and other costs and a reasonable attorney's fee." On August 31, 1931, the mortgagors entered into an agreement of sale with Rosario (or

Ross) Gigliotti, who is a defendant, which agreement provided that Rosario should "be liable for that certain mortgage" above referred to and "the parties hereto jointly and severally agree to pay all taxes and assessments for public improvements, share and share alike." This agreement was recorded by Rosario Gigliotti. The 1931 taxes were not paid and the tax certificate was bought by the county which on January 3, 1936, received the auditor's tax deed. On July 17, 1936, the county conveyed its title by quit-claim deed, reciting that it was a sale and not a redemption to Maria, Felice W., and Rosario Gigliotti, and on July 28, 1936, Felice W. and Maria Gigliotti quitclaimed the property to Rosario. At the time the Gigliottis bought the county's title the plaintiff had sent to the county commissioners a certified check in sufficient amount to redeem the property. Defendant Rosario claims clear title under these quitclaim deeds; plaintiff contends that in making the purchase from the county defendants were only paying the taxes as they were bound to do and that they took no title for themselves thereby and that Rosario Gigliotti took none independently.

In his complaint, plaintiff alleges execution and delivery to plaintiff of the note and mortgage, setting out the note and attaching a copy of the mortgage; that certain sums as set out have been paid on principal and interest and "that there is now due and owing to the plaintiff by Felice W. Gigliotti and Maria Gigliotti on said promissory note" a principal sum and interest specified; that demand has been made and payment refused. Plaintiff prays judgment for the sum alleged, with interest, for judgment that defendants have no title, for a lien against the property and foreclosure in the usual form.

Defendants demurred, then answered—Felice W. and Maria Gigliotti entering a general denial, and Rosario Gigliotti setting forth his tax title and claiming title as against plaintiff and the other defendants, denying generally plaintiff's allegations on the note and mortgage.

In reply plaintiff set out the agreement of sale between the Gigliottis, alleged that their purported purchase from the county was a redemption, and also alleged fraud and conspiracy in trying to defeat plaintiff's title and in purchasing from the county and making the quitclaim deed to Rosario.

At the trial, the parties stipulated the making, executing and delivering of the note and mortgage, the payments as set out by plaintiff and that $750 is a reasonable attorney's fee for plaintiff's attorney. The note and mortgage were not produced at the trial or introduced in evidence. The only important conflict in the evidence was as to the knowledge and intent of the parties and county officials when the county sold to the three Gigliottis.

The court found the plaintiff entitled to judgment on the note and foreclosure of the mortgage; that defendants took no title for themselves by their deed from the county but only paid the taxes as they were required to do; that defendants had acted fraudulently in procuring the deed from the county and any rights acquired thereby were inferior to plaintiff's mortgage; that Rosario Gigliotti put up the money for which the county issued the quitclaim deed and that plaintiff must repay this amount with interest before the judgment should be entered.

The parties by assignments of error on the appeal and cross-appeal have raised five principal questions:

(1) Defendants' demurrer should have been sustained because plaintiff did not allege directly that he was the holder or owner of the note sued on.

(2) Judgment for plaintiff was erroneous because plaintiff did not produce the note and mortgage at the trial, which was necessary to support the judgment.

(3) Rosario Gigliotti did not, by entering into the agreement of sale with his parents in 1931, preclude himself from purchasing the property from Carbon County after expiration of the period of redemption from tax sale.

(4) Defendants did not practice fraud upon the plaintiff.

(5) If judgment be for plaintiff, then it was proper for the court to require payment of the money advanced by Rosario Gigliotti for the deed from Carbon County before entering the judgment.

All the questions are stated from the point of view of the appellant and will be considered in order.

1. Respondent contends that the demurrer was properly overruled and that the complaint sufficiently alleged ownership of the notes for the reason that (a) when the payee of a promissory note is plaintiff and alleges execution of the note and delivery to him, it is presumed that he retained ownership; and (b) it was a necessary implication of paragraph nine of the complaint that plaintiff was the holder and the owner. The general rule is admitted to be as appellants state it, viz., that in an action on a promissory note plaintiff must allege that he is the holder or owner of the note. It has been almost unanimously held in other jurisdictions, and we so hold here, that when the payee of a promissory note alleges due making and execution of the note and delivery of the note to him, and the allegations of the complaint do not show transfer, assignment or endorsement by the payee, it is presumed that the payee is the holder or owner and a demurrer interposed on this ground will be overruled. *Berry* v. *Barton,* 12 Okl. 221, 71 P. 1074, 1083, 66 L. R. A. 513; *Burling* v. *Stinnett,* 46 Okl. 159, 148 P. 140; *First Nat'l Bank* v. *Lutz,* 28 N. M. 615, 216 P. 505; *Van Marel* v. *Watson,* 28 Ariz. 32, 235 P. 144, 145; *Dysert* v. *Weaver,* 46 Cal. App. 576, 577, 578, 189 P. 492; *Phillips* v. *Oppenheim,* 125 Okl. 181, 256 P. 352; *Oulvey* v. *Converse,* 326 Ill. 226, 228, 157 N. E. 245; *Peters* v. *Hubb Diggs Co.,* Tex. Civ. App., 35 S. W. 2d 449; *Marvick* v. *Knight,* 51 S. D. 151, 212 N. W. 866; *Thompson* v. *Johnson,* 202 N. C. 817, 164 S. E. 357; *Barton* v. *Pochyla,* Tex. Civ. App., 243 S. W. 785, 787; *Gibson* v. *Hannay,* 198 Iowa, 930, 934, 200 N. W. 579; *Union Guano Co.* v. *Garrison,* 130 S. C. 404, 407, 126 S. E. 133.

Appellants rely on three cases as holding to the contrary. In *Matteson* v. *Trask*, 63 Mont. 160, 206 P. 428, the action was not brought by a payee. In *Young* v. *Bray*, 54 Mont. 415, 170 P. 1044, the action was by the payee, but was not against the maker—it was against an alleged converter of the chattel securing the note and the court did not know whether plaintiff's theory was for conversion, on the note, or implied assumpsit. In *J. I. Case Threshing Mach. Co.* v. *Simpson*, 54 Mont. 316, 170 P. 12, the action was by the payee against the maker and the court held that a demurrer should have been sustained because the complaint failed to allege plaintiff's interest in the note sued on. But the case is not authority for appellant's position here, as is revealed by the court's opinion in that case:

"The complaint does not allege that the notes were made, executed, or delivered to the plaintiff, or that plaintiff is the owner or holder thereof, or that the amount due upon the indebtedness is due to the plaintiff. Section 6573, Rev. Codes. Indeed, it would seem that the complaint was drawn adroitly to avoid any direct allegation that plaintiff has an interest in the notes sufficient to warrant it in maintaining the action. * * * It was not absolutely necessary for plaintiff to allege that it was the owner of the notes at the time suit was commenced. * * * The general rule is well stated in 8 Corpus Juris 885, 886 as follows:

" 'Plaintiff must show title to the bill or note in suit or privity between himself and defendant, or that as the holder thereof, he has the legal right to maintain the action and to recover thereon. * * * In an action by the payee against the maker of the note it is sufficient to allege the execution and delivery of the note to plaintiff.' "

No case has been found which supports the position of appellants here. And even if it were necessary for payee plaintiff to allege that he is the owner or holder, the plaintiff here has complied, not by a direct allegation but by alleging facts from which the conclusion is unescapable that plaintiff is the owner or holder. After alleging that defendants made, executed and delivered the note to plaintiff (paragraph 4) the complaint alleges in paragraph nine:

"That there is now due and owing to the plaintiff by Felice W. Gigliotti and Maria Gigliotti on said promissory note, the principal sum of $5,685.45, together with interest. * * *"

That this constitutes a sufficient allegation of ownership against a general demurrer is sustained by *Dant & Russell, Inc.* v. *Ostlind,* 148 Or. 204, 35 P. 2d 668; *Commercial Nat'l Bank* v. *Smith,* 150 La. 234, 90 So. 581, and *Tillamook County Bank* v. *Internat'l Lumber Co.,* 106 Or. 339, 211 P. 183, 941. In the first case the court said [page 669]:

"The complaint alleges the corporate existence of the plaintiff and that the defendant, for a valuable consideration, made, executed, and delivered to the plaintiff the note in question, setting forth a copy thereof in haec verba. It further avers that the note is due and owing; that demand has been made for its payment; and that it has not been paid, in full or in part. The complaint, however, does not definitely allege that the plaintiff is still the owner and holder of said note. * * *

"Defendant * * * now for the first time contends that the complaint does not state facts sufficient to constitute a cause of action, for the reason that it does not specifically allege that the plaintiff is the owner and holder of the note. This contention of the defendant must be overruled * * *."

In the Louisiana case the complaint alleged that defendants "are justly and legally indebted unto your petitioner" which the court held a sufficient allegation of ownership by approving this language from an earlier Louisiana case:

"The statement that the defendant is indebted to the plaintiff on the note virtually and substantially carries with it the idea that plaintiff is the holder and owner of the note; for if the plaintiff did not hold the note, the defendant would not and could not be indebted to him on that note." [page 582.]

In the Tillamook Case the court said [page 943]:

"As * * * the complaint in substance alleged that the defendant, for value, executed and delivered them to the plaintiff and thereby promised to pay plaintiff the amount thereof, this sufficiently stated plaintiff's cause of action. From these allegations it would be implied that the plaintiff was the owner and holder of them."

Defendant's demurrer to the complaint as not stating a cause of action was properly overruled.

2. Was it error to give judgment for plaintiff because he did not produce the note or mortgage at the trial? Paragraph four of the complaint set forth a copy of the note and paragraph five incorporated the copy of the mortgage which was attached as "Exhibit A." The defendants Felice W. and Maria Gigliotti entered a general denial, and defendant Rosario Gigliotti denied generally all but paragraphs 1, 2, and 3 of the complaint and then entered an affirmative defense, counterclaim and cross-complaint. As to all the allegations pertaining to the note and mortgage there was a general denial by the Gigliottis. Both answers were duly verified. Respondent refers to R. S. U. 1933, 104-12-2, which provides:

"In all actions, allegations of the execution of written instruments and endorsements thereon * * * shall be taken as true, unless the denial of the same is verified by the affidavit of the party, his agent or attorney."

In *Gray's Harbor Lumber Co.* v. *Burton Lumber Co.*, 65 Utah 333, 236 P. 1102, as in this case, objection was made for the first time in this court that plaintiff had failed in its proof of formal matters connected with the instruments. The meaning of the above section was declared as follows [page 1104]:

"The objections to the complaint practically all belong to that class which are admitted unless specifically denied. This court has already held that under our statute * * * the execution of an instrument is not assailable under a general denial. *Brewer* v. *Romney*, 50 Utah 236, 167 P. 366. * * *

"If that section means anything, it means that, unless the defendant specifically denies the matters enumerated in the section they will be 'taken as true.' The statute is wholesome and of the highest utility. The matters referred to in the statute, while essential in a pleading, are nevertheless more or less formal. Moreover, they occur in almost all actions and are seldom assailed. In view of that, it is but fair and just, and certainly comports with the due and just administra-

tion of justice, that, in case a defendant intends to assail any of these formal matters, he should specifically indicate it in his answer."

Cases holding to the same effect, under similar statutes, are: *Grimes Savings Bank* v. *McHarg,* 204 Iowa 322, 324, 213 N. W. 798; *Williams* v. *Nieto,* 98 Cal. App. 615, 618, 277 P. 513; *Mechanics' Trust Co.* v. *Halpern,* 116 N. J. L. 374, 375, 184 A. 744.

Moreover, the stipulation read into the record admitted the "making, executing and delivery" of the note and mortgage as set forth in the complaint. The inquiry then, must be whether a note and mortgage must be produced at the trial and introduced in evidence when the mak- ■ ing, executing and delivery thereof to the plaintiff payee are admitted or not denied. Appellant relies strongly on *Tillamook County Bank* v. *Internat'l Lumber Co.,* supra. In that case the court on the first hearing said [page 185]:

"Under the issues of this case, before the plaintiff could be entitled to a verdict for the amount of the two $3,000 bills of exchange, or any part thereof, it was necessary for the plaintiff to prove that these instruments had not been transferred, and that the plaintiff was the holder of them at the time of the trial. It was also necessary for the plaintiff, before becoming entitled to a judgment for the amount thereof, to produce these instruments upon the trial and to identify them and prove that they were genuine and deliver them up by offering them in evidence." and: "* * * nor was the nonproduction of these negotiable instruments excused by proof that the circumstances were such that the defendant could not be compelled to pay them a second time."

As the court pointed out on rehearing, the ownership of the bills was put in issue and plaintiff therefore had to produce his proof:

"Plaintiff's ownership was a material fact which the defendant had the right to dispute, and whenever a dispute arose under the pleadings sufficient to raise this issue the plaintiff was bound to prove its ownership of the bills, either by a production of the bills themselves or by proving a sufficient legal excuse for their nonproduction."

Under our statute requiring specific denial, and with the stipulation that was made, no issue is here presented on the questions of execution or ownership, and the Tillamook Case is not applicable.

Appellants also refer to *Dolin* v. *Darnall*, 115 N. J. L. 508, 181 A. 201, 102 A. L. R. 454, as stating that possession and production of the instrument at the trial are prima facie evidence of ownership. That question is not before us, but only the question whether the instrument must be produced when its execution and delivery to plaintiff are admitted.

It is true that 3 R. C. L. 1338 and 8 Am. Jur. 668 state that:

"Where a note sued on is in the possession of the plaintiff, he must produce it, as it is the best evidence" and several cases are cited in support. *Webb* v. *Reynolds*, Tex. Com. App., 207 S. W. 914, 917, holds that: "* * * where a written instrument is declared on in a petition, and there is a general denial, it is necessary, in order to establish plaintiff's case, for him to offer the instrument in evidence."

And *LaRue* v. *Bloch*, 215 Mo. App. 501, 505, 255 S. W. 321, affirmed a judgment for defendant because, inter alia, plaintiff had not introduced the note in evidence nor shown where it was.

But it is well established that where the execution of an instrument is admitted its introduction in evidence is not essential to recovery. *Dill* v. *Malot*, 66 Okl. 74, 167 P. 219; *Miller & Lux* v. *Dunlap*, 28 Cal. App. 313, 152 P. 309; *Wilson* v. *Stevens*, 105 N. J. Eq. 377, 381, 148 A. 392; *Anderson* v. *Culver*, 127 N. Y. 377, 28 N. E. 32; *Goldstein* v. *Wells*, 6 Tenn. App. 367; *Abney-Barnes Co.* v. *Coal Co.*, 83 W. Va. 292, 299, 98 S. E. 298; *Jones on Mortgages* (8th Ed.) Sec. 1868; 19 R. C. L. 538-539. See, also, *Dickerman* v. *Northern Trust Co.*, 176 U. S. 181, 20 S. Ct. 311, 44 L. Ed. 423. In *Ray* v. *Ridpath*, 145 Okl. 69, 291 P. 546, 548 the court said:

"It is not necessary to introduce a note in evidence in the absence of an issue on it. The rule with reference to the introduction of a note in evidence at a trial for judgment thereon is stated in 8 C. J.

1058, cited by plaintiff in his brief, as follows: 'The bill or note sued on must in general be produced at the trial before a verdict and judgment can be reached thereon; or an excuse shown for its non-production, as that it is lost or destroyed, or is in the possession or control of the other party, *unless everything which the production of a note in evidence would prove is admitted by the pleadings.*' " (Italics added.)

Again in *Williams* v. *Norton,* 3 Kan. 295, 298, execution of the note and possession in the plaintiff were admitted. The court found no reason for then compelling introduction of the note in evidence, saying:

"Something was said in the argument about the non-production of the note at the trial. There was no necessity of offering it in evidence. Every thing such a performance would have proved, or tended to prove, was admitted by the pleadings. It might have been very gratifying to the defendants to have inspected their signatures with a view of ascertaining whether there had been any change for the better or worse in their handwriting; or for the purpose of bringing more vividly to their recollections some delightful incident connected with its execution, but as the law does not contemplate any such pleasant amusement during the progress of a trial, and the production of the paper being wholly unnecessary as a matter of evidence, the plaintiff was not required from legal considerations to perform an act so entirely supererogatory."

And in this case, appellant points to no substantial reason why the documents need have been introduced in evidence. No issue was made on the note or mortgage, and defendants' only injury was the making possible an argument on the point before this court. Some of the trial courts of this state have followed the practice of requiring the note to be produced before judgment entered and an endorsement made thereon that the obligation evidenced thereby is in judgment. This is a wholesome practice which we approve. *Utah Commercial & Savings Bank* v. *Fox,* 44 Utah 323, 140 P. 660. However, in this case there was no issue which required the note to be introduced in evidence, and the trial court did not see fit to require it to be produced for cancellation.

3. Did Rosario Gigliotti's agreement of purchase from his parents of the land in question preclude him from purchasing the property from Carbon County adversely to plaintiffs after expiration of the period of redemption from tax sale? The trial court found that Rosario Gigliotti assumed and agreed to be liable for the plaintiff's mortgage and "became liable to the terms and conditions of plaintiff's said note and said mortgage" and concluded that the Gigliottis in paying $522.24 to Carbon County "did not more than pay to said Carbon County the general taxes due upon said real property. * * *" If these findings and conclusions are supported by the evidence, the case of *Hadlock* v. *Benjamin Drainage District*, 89 Utah 94, 53 P. 2d 1156, 106 A. L. R. 876 is conclusive against appellant on this¹ question. In that case the court, speaking through two justices, with a third concurring specially, said [page 1157]:

"We are concerned more with the substance of the transaction than its form. The so-called purchase by the plaintiffs from Utah County was no more than the payment of the taxes in a round-about way. In form, it was a sale. In reality, it was the payment of the taxes and nothing more. Plaintiffs, by thus in form only purchasing the property, did not acquire any right or title to it different from that which they had before. The purchase by them made their title no better, no stronger. That one who is under a duty to pay taxes cannot add to or strengthen his title by purchasing the land at tax sale is established as settled law." (Citing numerous cases.)

In his concurring opinion the Chief Justice agreed with this statement of the law. Both dissenting opinions confirm this statement, and dissent on the ground that the mortgagee had no duty to pay the taxes.

Rosario Gigliotti's obligation to pay taxes, if it existed, arose out of the agreement of purchase he entered into with his father and mother on August 31, 1931. As above pointed out, in this agreement he agreed "to pay and be liable for that certain mortgage executed by the parties of the first part to Leo Albergo" and the three parties "jointly and severally agree to pay all taxes and assessments

for public improvements, share and share alike." By this agreement Rosario Gigliotti became bound to pay his share of the taxes. Had he purchased the property alone he might be in a position to argue that he paid taxes to the extent of one-third the price and the balance was a purchase on his own account, as to which he was not estopped to set up his independent title. But the county commissioners would not permit him to purchase alone and refused to make the deed to him as sole grantee. This was pursuant to a policy of the county to protect the original owner. Rosario Gigliotti stated that he had an investment in the property he wanted to protect and that he had paid taxes on it, and he wanted the deed in his own name because of family strife. Thus the deed from the county ran to those who had the duty to pay the taxes and who claimed to be owners of the property. "The purchase by them made their title no better, no stronger." *Hadlock* v. *Benjamin Drainage District*, supra.

4. Did the defendants practice fraud upon the plaintiff? The findings of fact are to the effect that defendants attempted to cheat and defraud plaintiff out of his security. Since under the trial court's judgment and ours plaintiff is not losing his security, this question becomes academic and will not be further examined.

5. In giving judgment for the plaintiff was it error for the court to order plaintiff first to pay Rosario Gigliotti the $522.54 that was paid Carbon County for the quitclaim deed? Plaintiff raises this question by cross-appeal. The court found that in purchasing the property from Carbon County the three Gigliottis did no more than pay the taxes they were bound to pay. There is no finding that Rosario Gigliotti furnished this money and there is no evidence to that effect. Indeed, plaintiff's exhibit "6," the County Treasurer's receipt for the money states: "Received of Maria Gigliotti et al., by B. H. Young, County Clerk, $522.54. * * *" Appellants do not contend in their brief that Rosario Gigliotti paid this sum himself. This portion of the judgment of the trial court is without support and therefore

erroneous. We do not deem it necessary to decide what right to refund, if any, Rosario Gigliotti would have if he had paid the entire sum out of his own pocket.

The judgment of the district court is affirmed, except as to that portion ordering plaintiff to pay to Rosario Gigliotti the sum of $522.54 with interest and as to that the judgment is reversed. Costs to respondents.

HANSON and LARSON, JJ., concur.

MOFFAT, Justice.

I concur. As held in the opinion of Mr. Chief Justice FOLLAND and as a matter of pleading the cases cited support the position taken that when other things indicate present possession and ownership though not in terms alleged, a complaint so showing is good as against general demurrer. Pleading is one thing, proof and court procedure is another. The note being a negotiable instrument may pass from hand to hand if payable to bearer, or otherwise by endorsement and delivery. The note should be produced or if it cannot be produced its loss or destruction accounted for, and if in possession of the claimed owner, as plaintiff, should be produced and by proper endorsement shown thereon show that the obligation for which it stood has taken the form of a judgment. Such practice on the part of the trial court closes the door against fraud upon a third party and without harm to anyone protects the maker or any intermediate endorser. Even if production of the negotiable instrument be not essential as a matter of proof because allegations or admissions amount to a confession of judgment prudence would dictate that the note should show after judgment thereon that it is no longer an existing obligation.

WOLFE, Justice.

I concur. The opinion involves an extension or new application of the principle laid down in the opinion in the case of *Hadlock* v. *Benjamin Drainage District*, 89 Utah 94, 53 P.

2d 1156, 1157, 106 A. L. R. 876. It was said in that opinion "That one who is under a duty to pay taxes cannot add to or strengthen his title by purchasing the land at tax sale." The cases in support of that proposition were all cases where the law prevented one who paid the taxes or bought at a tax sale or bought a tax title from deriving any advantage over another in respect to whom he owed the duty of protecting a title or a lien. The difference between the prevailing and dissenting opinions in that case was as to whether a mortgagee whose lien had been lost by the tax sale could purchase at the tax sale the property on which he formerly had a lien free from drainage district taxes; but there was no difference in opinion as to the principle above enunciated. The writer is of the opinion that the purchaser at the tax sale, whose duty it was to pay the taxes, obtains a new title from the county and does not redeem from a sale which extinguished his title but that he is estopped as to the mortgagee from denying the mortgagee's lien on his newly acquired title. This estoppel arises because it was his, the mortgagor's, duty to pay the taxes and preserve the lien for the mortgagee so that his purchase at the tax sale must be considered to be in furtherance of and harmonious with his duty. Naturally, if the auditor's deed extinguished the mortgagor's title and wiped off all liens (*Hanson* v. *Burris*, 86 Utah 424, 46 P. 2d 400) the purchase of the mortgagor at the tax sale would not be a redemption (the period of redemption having passed) but would be the initiation of a new title free from all prior liens. The only way the mortgagee, who has lost his lien by that process, can assert a lien is by the process of estoppel by which the law forbids the mortgagor-purchaser the right to deny the existence of that lien. The question arises as to whether one who has not obligated himself to the mortgagee to pay taxes but only to the mortgagor, comes within the circle of those against whom the estoppel may be invoked. In this case Ross Gigliotti had agreed to pay one third of the taxes, for which he was to obtain an interest in the property. Had he and the

other two Gigliottis done what they should have done, i. e., paid the taxes, Ross would have obtained title from the other two Gigliottis by coveyance subject to Albergo's mortgage. By failing to keep his contract with the other defendants to pay his part of the taxes, he cannot as to Albergo put himself in a better position in regards the property than if he had performed the contract. It is an application of the more ultimate principle that one should not be permitted to gain by his own wrong. The estoppel may be invoked by Albergo as to Rosario Gigliotti.

Furthermore, another and additional reason for the estopel appears. Rosario Gigliotti had made a number of payments of principle and interest to Albergo on the theory that he had an interest in the property arising by virtue of his contract with his parents. For that reason he had a duty which was equivalent to that of the owner to the mortgagee. Moreover, Albergo had sent a check to pay taxes, interest, etc. to the county commissioner in order to purchase the property. He then learned the Gigliottis had applied to purchase, whereupon he withdrew his check consenting to let them purchase. To permit the Gigliottis to take the property free from his lien would in effect work a fraud upon him. I think such facts form an additional ground for estopping the defendants from denying Albergo's lien.

While I cannot agree with the lower court's finding that defendants took no title by the deed from the county, but only paid the taxes as they were required to do for reasons above noted, I think, in view of the prevailing opinion in the Hadlock Case, the finding was correct. The court could hardly find otherwise And the result at which it arrived is of course the same as if it had applied the principle of estoppel.