WILLIAM SPECK, appellee, v. ROBERT E. HEDGES and HAUBRICH CONSTRUCTION COMPANY, appellants.

No. 51348.

(Reported in 128 N.W.2d 918)

June 9, 1964.

Paul W. Deck and Robert J. Larson, both of Sioux City, for appellants.

John E. Hutchinson and Darrell E. McEntaffer, both of Sioux City, for appellee.

Peterson, J.—Plaintiff sued defendants for damages by reason of their truck striking plaintiff as he was crossing Fourth Street in Sioux City in the pedestrian sidewalk area. He was seriously injured. Jury returned a verdict of $22,000. Defendants appealed.

I. Plaintiff was 69 years of age. He is married and living with his wife. They have six children, all grown to maturity. He worked many years as a laborer, mostly for Cudahy Packing Company until they closed their plant at Sioux City in 1953. In 1954 plaintiff found part-time employment with Sioux Carving Shop, assembling furniture. He was doing this type of work immediately prior to January 29, 1962. He normally only worked four hours a day because he could not earn

over $1200 a year, since he was drawing $105 per month social security.

On Saturday, January 29, he went to work about 7 a.m. On that particular day he worked until 2:30 p.m.

When plaintiff left his work at 2:30 he caught a bus near-by and rode to Fourth and Nebraska Streets. He walked from there to the Cornhusker Tavern, a distance of two blocks. He cashed his paycheck in the tavern, bought some tobacco, and sat down and had two glasses of beer. When he left the Cornhusker Tavern he walked west on the south side of Fourth Street to the southwest corner of Fourth and Pearl Streets. At that point he wanted to go across Fourth Street starting at the southwest corner of the intersection and going to a drug-store located on the northwest corner of the intersection.

Fourth Street is a one-way street with traffic flowing toward the west. As he was standing on the curb waiting for the signal light to change to green for northbound pedestrian traffic he had a clear view of the intersection. He knew he was going to cross the street and looked across to inspect the traffic. He noticed cars stopped on the north side of the Fourth Street intersection, also waiting for the green light, but he did not see a truck. He crossed about three fourths of the distance between the curbs when he was struck by the truck. The truck was stopped on Pearl Street and was going through the intersection, and then to the right, and west on Fourth Street. Plaintiff was walking within the two white lines of the crosswalk.

Plaintiff testified he never saw the truck until it was very close to him, as it was coming around the corner to go west on Fourth Street. He says he could not get out of its way. At first he kept going, but held out his right hand. In the confusion of the moment when plaintiff saw he could not get away from the truck he held out his hand and stopped. Defendant Hedges, driver of the truck, testified he then sounded his horn and stopped. Plaintiff then started walking again in the crosswalk and defendant started ahead with his truck. The truck then reached plaintiff and he fell forward across the right fender, striking his head against the right front headlight and knock

ing out the lens. The sun was shining and the streets were dry.

Plaintiff did not recall what happened after he was struck and fell to the ground. Other witnesses testified about going to him and pulling him away from in front of the truck and straightening him out on the pavement, with somebody's coat under his head. The police came within a few moments and testified about what they found as above outlined, although none of them saw the accident. The ambulance came in a very short time and took plaintiff to St. Vincent's Hospital. He did not remember anything again until he awakened in the hospital.

Dr. Harold W. Jones, his family physician, testified he made a diagnosis and took X rays and found plaintiff suffering from concussion, shock, multiple abrasions, and fractures of his right pelvis, right ankle and left knee.

Plaintiff was in the hospital seven weeks. He was unconscious during the first part of the time, but regained consciousness and gradually became better. During the last weeks he took exercises in the therapy department for walking. At first he walked with a walker, later with crutches, and later with a cane.

Immediately after plaintiff's injury the doctor gave him treatment for shock and sedation to alleviate the pain and it also became necessary to put him in traction in order to cure, as far as possible, his pelvis and his legs.

Doctor Jones stated he had made a prognosis of plaintiff's disability shortly before the trial and it was his opinion that plaintiff had approximately 25 to 30 percent disability of the body as a whole. He testified he would have to see Mr. Speck from time to time in the future with reference to his injuries. In the doctor's opinion plaintiff could not go back to his business and could not do any manual labor. He was not sure as to whether plaintiff's disability would improve in the future, but he did not think so. Plaintiff stated at the time of the trial that he was still experiencing pain in his knee, hip and back and that such pain had persisted constantly since the time of the accident. At the time of the trial he was still using a cane because he had to have something for support. He could not

stand up, even with the help of the cane, for more than several moments at a time. The fracture of the pelvis was noticeable at three different places. Dr. William M. Krigsten was a specialist on the case and he testified plaintiff would have a deformity as to his pelvic area and a limitation of motion in the hip joint. He also testified, in his opinion, plaintiff had a total permanent disability of 25 percent as to the body as a whole. He did not think plaintiff's condition would improve and from the nature of it there was a probability that it might become worse.

Plaintiff and one other witness testified he stepped off the curb on the southwest corner of the intersection when the green light appeared and proceeded in the pedestrian walkway, marked by white lines, toward the northwest corner. Other witnesses testified he came from the northwest corner of the intersection. It was immaterial from whence he came; he was hit by the truck. At any rate it was a question of fact for the jury to decide. It was stipulated by the parties that according to mortality tables plaintiff had a life expectancy of 10.64 years.

II. Appellants relied upon the following propositions for reversal: 1. The motion for directed verdict made after plaintiff rested his case should have been sustained, as plaintiff failed to prove or meet the burden of proof concerning freedom from contributory negligence. 2. The award of damages to plaintiff by the jury was excessive.

III. The question of contributory negligence is normally and generally a question for the jury. Citation of authorities is unnecessary. Rule 344(f)10, Rules of Civil Procedure.

We have stated the situation in the case of Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 690, 26 N.W.2d 429, in the following words: "The issue of plaintiff's freedom from contributory negligence should have been submitted to the jury. Proximate cause and contributory negligence are questions for the jury save in the very exceptional case when all reasonable minds must unite in a contrary conclusion."

In the case at bar there were some inconsistencies and contradictions in the testimony which without any doubt made it a question for the jury.

792

We made some observations with reference to the rights of a pedestrian in the case of Andrew v. Clements, 242 Iowa 144, 150, 45 N.W.2d 861, 865; where we used the following language: "A pedestrian at a crosswalk has a duty to exercise ordinary care to avoid a collision with vehicles, but when there is a danger of collision the one having the preference has the right to the first use of the crossing and it is the duty of others to give the one having such preference a reasonable opportunity to proceed. Switzer v. Baker, 178 Iowa 1063, 1071, 1072, 160 N.W. 372; Rolfs v. Mullins, 179 Iowa 1223, 1229, 162 N.W. 783; see also annotation 96 A. L. R. 786. Even where there are inconsistencies and contradictions of testimony by a witness or witnesses, yet it is for the jury to decide relative to the different versions. Switzer v. Baker, 178 Iowa 1063, 1069, 160 N.W. 372."

■ Motion for directed verdict was made at the close of plaintiff's testimony, but it was not renewed at the close of all the evidence. Failure to renew the motion to direct at the close of all the evidence leaves nothing for review as to the ruling at the close of plaintiff's evidence. Murphy v. Adams, 253 Iowa 235, 111 N.W.2d 687; Newton National Bank v. Strand Baking Co., 224 Iowa 536, 277 N.W. 491; Jensvold v. Chicago G. W. R. Co., 236 Iowa 708, 18 N.W.2d 616. Defendants' record was not properly preserved, but we have presented the matter from the standpoint of its merits in view of defendants having urged the question.

■ IV. Defendants allege the verdict was excessive and the court committed error in letting it stand at the amount of $22,000.

As we read the record we find according to the doctor's testimony plaintiff was very seriously injured. His pelvic bone and his right leg were broken. His left ankle was injured to the extent that he was and is unable to properly walk. He was in the hospital for a period of seven weeks before he could return to his home and even at this time the doctor states and he states that he is unable to stand up more than a few moments at a time. His physical condition is such that he is unable to go back to the work which he had to leave at the time of the

injury and it is the general opinion of the doctors that he is not going to be able to perform any manual labor of any kind for the remainder of his life.

He had about $2500 of hospital and doctor expense. According to the record he had a great deal of pain and suffering from the time he was struck until the time he got out of the hospital and he testified he still had pain and suffering at the time of the trial, which was in April of 1963, and therefore much more than a year after the happening of the accident.

With his expectancy of 10.64 years the jury could believe from the evidence that for the remainder of his life he would be unable to do and accomplish any work. Both doctors for plaintiff testified that there was an impairment of his bodily usefulness to the extent of at least 25 percent of the whole body.

Taking all these items into consideration the verdict of the jury was not unduly excessive. We have often held that unless there is passion and prejudice or unless there is some other ulterior motive involved or if the trial court determines some error has been made, or justice has not been accomplished, we should not interfere with the verdict of a jury in a case such as the case at bar. Stiefel v. Wandro, 246 Iowa 807, 68 N.W.2d 53; Miller v. McCoy Truck Lines, Inc., 243 Iowa 483, 52 N.W.2d 62; Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 82 N.W.2d 82; Stafford v. Gowing, 236 Iowa 171, 18 N.W.2d 156.

The general rule has been well stated in the case of Elings v. Ted McGrevey, Inc., 243 Iowa 815, 820, 821, 53 N.W.2d 882, as follows: "There can be no rigid rule or standard by which to fix the amount of recovery on the chief items of damages submitted to the jury, in this case, or in cases of this kind, in general. The determination of the amount is ordinarily within the sound discretion of the jury. Of course, this discretion is not without limit or control. But ordinarily courts will not disturb such verdicts unless they are so flagrantly excessive or small, or so out of reason as to shock the conscience or sense of justice, or raise a presumption that they are the result of passion or prejudice or other ulterior in-

fluence. This court has many times so announced from its earliest to its latest decisions."

We hold the verdict is such, under the facts and circumstances of this case, that it should not be disturbed.

The case is affirmed.—Affirmed.

All JUSTICES concur except HAYS, J., not sitting.